WILLIAM H. BAUER ET AL., RELATORS, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF PATERSON ET AL., RESPONDENTS.

Submitted October 16, 1925—Decided March 15, 1926.

1. An application for a permit to install three gasoline tanks and one fuel oil tank and the necessary accessories, in connection with a building to be erected on the relator's premises, to be used for selling there automobile accessories and gasoline and oil, and described by the relator as a "drive-in service station," is, in effect, an application for a permit for the erection of a motor vehicle service station.

2. Where the language of an ordinance is clear and unambiguous, and its literal meaning leads to no absurd result, and is not repugnant to other parts of the ordinance, such literal meaning should be accorded to it in its exposition.

3. An ordinance of a city prohibiting the erection of a motor vehicle service station on any lot situated within a distance of two hundred feet of a church, as measured along the public street, is a reasonable regulation touching public health, safety and general welfare, and is within the scope of the police power of the city, and is consequently valid.

On rule to show cause why a *mandamus* should not issue.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

Bauer v. Bd. Fire and Police, &c., Paterson.    102 N. J. L.

For the relators, *Edward F. Merrey.*

For the respondents, *Benjamin J. Spitz.*

The opinion of the court was delivered by

TRENCHARD, J.    This is a rule to show cause why the board of fire and police commissioners of the city of Paterson should not be directed by peremptory or alternative writ of *mandamus* to issue to the relators a permit to install three gasoline tanks and one fuel oil tank and the necessary accessories on property located on the southeast corner of Van Houghten and Straight streets, in the city of Paterson.

Relators applied in the first instance to the building inspector of the city for a permit to erect a building on the site in question, without mentioning or indicating to what use the building was to be put, and presented plans and specifications in accordance with the building regulations. The permit was granted. The relators, however, did not proceed to build in accordance with the permit, but made an application to the board of adjustment for a permit for the erection of a "drive-in service station" in connection with the building. This was denied by the board of adjustment after hearing, upon the ground that the erection and maintenance of such a service station would be in violation of the zoning ordinance of the city, inasmuch as the proposed station would be less than two hundred feet from a church, and, therefore, forbidden by the ordinance. Without seeking any remedy against the board of adjustment, and without any further application to the building inspector, the relators then made application to the board of fire and police commissioners, and, being again refused, made the present application for a writ of *mandamus,* which, we think, must be denied.

It is stipulated that there exists in the city of Paterson a zoning ordinance, passed November 29th, 1921, section 7 of which reads, in part, as follows:

"Under no circumstances shall a permit be issued for the erection or enlargement of a garage for more than five motor

vehicles, or for a motor vehicle service station or for the conversion of any premises not so used to be used for such purposes, in any zone, whether it be a business zone or an industrial zone, if any part of the lot or plot in question is situated within a distance of two hundred feet as measured along the public streets of, or in any case within any portion of a street between two intersecting streets in which portion there exists—(1) a public school; (2) a duly organized school, other than a public school conducted for children under sixteen years of age, and giving regular instruction at least five days a week for eight or more months a year; (3) a hospital, maintained as a charitable institution; (4) a church; (5) a theatre containing at least three hundred seats, or (6) a public library."

Now, the relators' application is for a permit to install three gasoline tanks and one fuel oil tank and the necessary accessories in connection with a building to be erected on the relators' premises in question, to be used for selling there automobile accessories and gasoline and oils, and described by the relator as a "drive-in service station." That, we think, is, in effect, an application for a permit for the erection of a motor vehicle service station.

But the relators contend that "the business proposed to be carried on by relators is not prohibited by section 7 of the zoning ordinance."

We think it is. That section prohibits a motor vehicle service station within two hundred feet of a church as measured along the public street, and it is admitted that the premises in question are within two hundred feet of a church so measured.

The relators, however, argue that "it was clearly the intention of the ordinance to provide quietness in these neighborhoods," and that it "was intended to prohibit the type of station where *repairs* are made to automobiles, which is characteristically a noisy business." That is no doubt true, but that is not all. It was also intended to prohibit a drive-in service station where gasoline, oil and motor vehicle accessories are sold (the business proposed to be carried on by relators) within two hundred feet of a church.

The term "motor vehicle service station" is not ambiguous, but is entirely plain. There is no question about the meaning of the words "motor vehicle," and it is clear the words "service station" mean a place where service is rendered, and, taken in connection with the words "motor vehicle," certainly mean any place where service is customarily rendered to motor vehicles. Undoubtedly, the phrase comprehends a place at which automobiles or motor vehicles are given service, even though it consists only of supplying them directly with oil, gas and accessories. The contention that the language in question merely prohibits a service station for *repairs* to motor vehicles, not only reads in a qualification which is not there, but the argument based thereon is fallacious in its assumption that a place for repairs is the only kind of place that can disturb the quiet of a church, and the safety of its congregation. It ignores the fact that a place which draws to it motor vehicles for gasoline, oil and automobile accessories, with the consequent and frequent stopping and starting of the cars, can also disturb the quiet of a church and the safety of the congregation. If it had been the intention of the framers of this section of the ordinance merely to prevent *repairs* to automobiles being done on the premises within two hundred feet of a church, it would have been a simple matter to have stated that no garage wherein *repairs* are made shall be allowed within that distance. But that they did not do. Where, as here, the language of an ordinance is clear and unambiguous, and its literal meaning leads to no absurd result, and is not repugnant to other parts of the ordinance, such literal meaning should be accorded to it in its exposition. *Water Commissioners* v. *Brewster,* 42 *N. J. L.* 125.

The relators further contend that if the section of the ordinance in question prohibits the business proposed to be carried on by relators, it is invalid, because not a reasonable regulation touching public health, safety and general welfare.

But this contention has been decided adversely to the relators in *Schait* v. *Senior,* 97 *N. J. L.* 390, in which case the court had for consideration a section of a zoning ordinance

which was the prototype of the section of the ordinance now under consideration. It was there held that the ordinance of the town prohibiting the erection of a garage or a group of garages for more than five motor vehicles on any lot situate within a radius of two hundred feet of, or within any portion of a street between two intersecting streets in which portion there exists a public library or church, is a reasonable regulation touching the public health, safety and general welfare, and is within the scope of the police power of the town, and is, consequently, valid. The court there said: "It is a reasonable regulation of the size and location of garages, in view of their obvious and recognized possibilities for incidental dangers, if unreasonably large and unduly near churches, public libraries or the like, where large bodies of citizens habitually congregate."

There is but one point of difference between the case at bar and that case, and this is, that, in that case, the question was whether the prohibition of a garage or a group of garages for more than five motor vehicles on any lot situate within a radius of two hundred feet of a church was a reasonable regulation touching the public health, safety and general welfare, and was within the scope of the police power. Whereas, in the case at bar, the question is whether the language of the ordinance prohibiting the erection of a motor vehicle service station on any lot situate within a distance of two hundred feet of a church, as measured along the public street, is a reasonable regulation touching public health, safety and general welfare, and within the scope of the police power of the city. We think that it is, and that it is, consequently, valid. It is a reasonable regulation in view of the obvious and recognized possibilities of danger and disturbance to church congregations in the erection and maintenance of a motor vehicle service station if unduly near churches where large bodies of people habitually congregate. A regulation preventing the erection of certain type of construction or business within two hundred feet from any building might well be deemed an unreasonable interference with property rights, but where, as here, the building is a church or the like at which large numbers of

children or adults are accustomed to gather for study or devotion, it' is well within the police power to provide for them as much safety and freedom from disturbance as may be possible and reasonable.

In this connection the relators say that "the case of Schait *v.* Senior was practically overruled in the Nutley case." But we think that is not so. The latter case held the zoning ordinance there under consideration to be ineffective to deprive one of the use of his property where *no question of public health, safety or general welfare was involved. Ignaciunas* v. *Risley,* 98 *N. J. L.* 712; *affirmed,* 99 *Id.* 389.

We believe that the foregoing observations, in effect, dispose of every question raised and argued.

The relators stipulate that the ordinance in question was properly enacted on November 29th, 1921. In their brief they say that "we raise no question as to the power of the board of public works to pass the ordinance in question." That ordinance prohibits the erection and maintenance of the motor vehicle service station which the relators seeks to erect on the premises in question. The contention of the relators that the board of fire and police commissioners is "the appropriate board to regulate the *storage and sale of gasoline*" raises another question with which we are not now concerned and is beside the mark. With respect to the argument that "the mere installation of the tanks and the storage of gasoline and oil therein does not violate the provisions of the zoning ordinance," it is a sufficient answer to say that relators in their own case have made it plain that they do not intend merely to install tanks and store gasoline and oil on the premises. They say in their brief that they intend "to sell there automobile accessories and gasoline and oils." Moreover, their application requests permission to erect a drive-in service station, and their proofs and admissions show that they intend to sell gasoline, oil and accessories to motor vehicles which are driven into the premises for that very purpose.

Since our conclusion is that the relators are not entitled to the permit applied for, the rule to show cause will be' discharged, with costs.