# JOHN D. BARRETT AND ANOTHER v. HASSEL M. SMITH AND OTHERS.[1]

May 29, 1931.

Nos. 28,341, 28,342.

[1]Reported in 237 N. W. 15.

432

*George S. Grimes*, for plaintiff-appellants.
*Junell, Oakley, Driscoll & Fletcher*, for defendant-appellants.

STONE, J.

Defendant Cedar Lake Ice & Fuel Company is a Delaware corporation licensed to do business in this state. It has its principal office and all of its business is transacted in Minneapolis. The other defendants are its directors and managing officers. Plaintiffs are minority stockholders. In this action they charge defendants, particularly defendant Smith as treasurer and general manager and defendant Ellison as president, with mismanagement and conversion of corporate funds. By the decision below plaintiffs were awarded in part for the benefit of the corporation, and denied in part, the relief they seek. Among the things denied was the appointment of a receiver to wind up the affairs of the corporation in this state. Both plaintiffs and defendants moved for amended findings or a new trial, and both appeal from orders denying such motions. We shall state the facts piecemeal as needed to develop the several points for decision.

■ At the outset we have a question of procedure. The decision below was made May 13, 1930. Defendants made two motions for amended findings or a new trial. The first, heard June 7, 1930, was denied by an order filed July 14, served on counsel for defendants July 15, 1930. Defendants' second motion (made July 29) was .based upon the same general grounds first urged. Set for August 8, it was continued by consent to September 16. Then plaintiffs objected because of the previous motion and expiration of the time for appeal from the order denying it. September 16, 1930, brought the order denying defendants' last motion but reciting plaintiffs' objection and that it had been overruled. From that order defendants appeal. They are met by a motion to dismiss. Plaintiffs argue that the power of the district court in respect to granting or denying a motion for a new trial is exhausted after one such motion has been determined and the time for appeal has expired.

That defendants' second motion was considered on the merits is plain from the recital, in the order, of plaintiffs' objection and the statement that it was overruled. That was the equivalent of an order granting leave for the second motion. McLaughlin v. City of Breckenridge, 122 Minn. 154, 141 N. W. 1134, 142 N. W. 134; Fletcher v. Southern Colonization Co. 148 Minn. 143, 181 N. W. 205; First T. & S. Bank v. U. S. F. & G. Co. 156 Minn. 231, 194 N. W. 376; LaPlante v. Knutson, 174 Minn. 344, 219 N. W. 184. But all the time the first order remained in effect, with nothing to stay the running of the time for appeal or extend its duration.

As to the power of the district court, after the time for appeal has expired, to reconsider an appealable order or to permit a renewal of the motion or a second motion for the same relief, our decisions are in an unsatisfactory state. They have the background of statutory law set up by G. S. 1923 (2 Mason, 1927) § 9283. That section first declares the power of the district court, subject to limitations not now important, to relieve a party from any judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. Then, disjunctively and by way of addition, follows the declaration that "for

good cause shown" the court may "modify or set aside its judgments, orders, or proceedings."

In Beckett v. N. W. Masonic Aid Assn. 67 Minn. 298, 69 N. W. 923, 924, it was considered that Grant v. Schmidt, 22 Minn. 1; Semrow v. Semrow, 23 Minn. 214; and Weld v. Weld, 28 Minn. 33, 8 N. W. 900, expressed a too limited view of the court's power over its own orders and judgments. The holding there [67 Minn. 301] was that the statute just referred to, passed in 1876 after the decision in Grant v. Schmidt, 22 Minn. 1, "was clearly intended to do away with the rule of law" there laid down. It was not mentioned that in the Grant, Semrow, and Weld cases judgments rather than orders were in question.

In the Beckett case, 67 Minn. 298, 301, 69 N. W. 923, the court said:

"The order granting a new trial was set aside before the time to appeal from it expired, and we are clearly of the opinion that said amendment [now § 9283] gave the court below authority to set it aside, if deemed erroneous."

In 5 Dunnell, Minn. Dig. (2 ed.) § 7081, there is the statement:

"The district court has power to set aside an order granting a new trial, on the ground that such order was erroneously granted, any time before the period for appeal expires." The cases cited in support are Beckett v. N. W. Masonic Aid Assn. 67 Minn. 298, 69 N. W. 923; Cox v. Selover, 165 Minn. 50, 205 N. W. 691, 692; Duffy v. Stratton, 169 Minn. 136, 210 N. W. 866.

We have just considered the Beckett case, 67 Minn. 298, 69 N. W. 923. In the other two the point was not involved. The decision in Cox v. Selover, 165 Minn. 50, 205 N. W. 691, depended upon an application not of § 9283 but of § 9326 (G. S. 1923 [2 Mason, 1927]) providing that a motion for a new trial, made on the minutes of the court, *must* be heard within 30 days after the coming in of the verdict unless the time be extended by written stipulation or by the court for cause. That statute is mandatory but applies only to motions for new trial made on the minutes of the court. Cox v.

Selover, 165 Minn. 50, 52, 205 N. W. 691, expressly affirms the general "power of the court to vacate its orders."

In Duffy v. Stratton, 169 Minn. 136, 210 N. W. 866, the vacating order came within the time for appeal. The present question did not arise and was not even referred to. In National Citizens Bank v. McKinley, 111 Minn. 214, 126 N. W. 526, a litigant was permitted, in effect, to renew a motion for a new trial without suggestion even that the expiration of the time for appeal was important one way or the other. In Pulver v. Commercial Security Co. 135 Minn. 286, 160 N. W. 781, and in Peterson v. Parviainen, 174 Minn. 297, 219 N. W. 180, it was assumed that the power of the district court to modify or vacate an appealable order expired with the time allowed for appeal.

Directly contrary to that assumption is the decision in First Nat. Bank v. Briggs, 34 Minn. 266, 26 N. W. 6. There an appealable order was made dissolving an attachment. Before the expiration of the time for appeal the court granted an order to show cause why it should not be vacated. Upon the hearing the court reconsidered the whole issue and made a new order affirming the original dissolving the attachment. From the *last* order the appeal was taken, but more than 30 days after notice of the original order.

The decision was [34 Minn. 267] that while the time for appeal cannot be extended, "it may, however, result from the exercise of the authority of the court to review, set aside, or modify its own orders, that upon an appeal from an order redetermining a matter once passed upon by a former order, made more than 30 days before such appeal was taken, there may be brought up for review the same questions involved in the former order."

As to appealable orders other than those denying new trials, we do not hold that they cannot be reviewed by the court making them after expiration of the time for appeal. In Fletcher v. Southern Colonization Co. 148 Minn. 143, 181 N. W. 205, that factor was apparently assumed to lack importance, the objection stressed being only that there was no express leave to renew or reargue the motion

to vacate a judgment. Of course when a judgment has become final by the expiration of the time for appeal, it is no longer open to attack by motion for new trial. Smith v. Minneapolis St. Ry. Co. 134 Minn. 292, 157 N. W. 499, 159 N. W. 623. That is because the law contemplates that a judgment, unreversed and for six months unchallenged by appeal, shall be final, subject only to the right to vacate, as limited by statute, for fraud or other good cause, exclusive of mere error. Gallagher v. Irish Am. Bank, 79 Minn. 226, 81 N. W. 1057; Gasser v. Spalding, 164 Minn. 443, 205 N. W. 374.

The right of appeal is statutory as to orders of the district court given by G. S. 1923 (2 Mason, 1927) § 9498. The enumerated orders, including those denying motions for new trial, are made appealable generally, without qualification or elaboration. Neither there nor in the statute concerning motions for new trials (§ 9325) do we find anything terminating the power of the district court, upon expiration of the time allowed for appeal, to vacate an order made before judgment. Never before, so far as we have been able to find, has the question required or received decision in respect to an order. There has never been here "an application of the judicial mind to the precise question necessary to be determined." Carroll v. Carroll, 16 How. 275, 287, 14 L. ed. 936. Hence the question is open notwithstanding the contrary dicta, already noted, in Pulver v. Commercial Security Co. 135 Minn. 286, 160 N. W. 781, and Peterson v. Parviainen, 174 Minn. 297, 219 N. W. 180. There being no explicit law on the subject, decision must be based upon controlling general propositions.

The district court has general, original jurisdiction, with the plenary power characteristic of such courts. Agin v. Heyward, 6 Minn. 53 (110); Stahl v. Mitchell, 41 Minn. 325, 43 N. W. 385; Hanford v. Village of Alden, 122 Minn. 149, 142 N. W. 15. Its orders, as we shall stress later, are not res judicata in the strict sense, but subject to review on renewal of the motion or one for modification or even vacation. "Whatever may be done upon motion to the court may, by the court, upon further motion seasonably made by either party, be wholly undone." McLaughlin v. City of Breckenridge, 122 Minn. 154, 158, 141 N. W. 1134, 142 N. W.

134, 135. That power existed at common law and is but confirmed by statute. Duffy v. Stratton, 169 Minn. 136, 210 N. W. 866; G. S. 1923 (2 Mason, 1927) § 9283. (The common law "term rule," restricting the power to the term in which the original order was made, never did prevail in our practice. Grant v. Schmidt, 22 Minn. 1, 4.)

There being nothing in our law terminating it, in the case of an appealable order, upon the expiration of the time allowed for appeal, our conclusion must be and is that it is not so limited. The difficulty has arisen from inadvertently assuming that orders are in the same category as judgments. They are not. Judgments have a terminating function and a finality not possessed by mere orders. To hold that the power of a court to modify or vacate an appealable order expires with the time allowed for appeal would give to such order all the conclusive and barring effect of a judgment. The issue settled would be res judicata. But the unquestioned law is the other way. The rule of res judicata does not apply in all its strictness to mere orders, which until entry of judgment remain subject to the power of the court to vacate or modify, qualified only by the rule that there may not be successive motions for the same relief without leave of court. Stacy v. Stephen, 78 Minn. 480, 81 N. W. 391; LaPlante v. Knutson, 174 Minn. 344, 219 N. W. 184, and cases cited.

We do not find that the precise question has arisen elsewhere. But the kindred problem, whether a court may reconsider an order granting or denying a new trial, has caused considerable judicial trouble, resulting in a "majority rule" for the affirmative and a "minority rule" contra. Ann. Cas. 1913B, 485. See also 14 Enc. Pl. & Pr. 947; 20 R. C. L. 312. Our examination of the cases produces the conclusion that the difference is not so much in judicial conclusion as in local practice, largely a matter of statute. In some states, California for example, a motion for a new trial follows the judgment, which seems to be entered at once on the verdict. That explains and justifies the rule which there prevents repetition of the motion for a new trial. "There must be some point where

litigation in the lower court terminates, and the losing party is turned over to the appellate court for redress." Dorland v. Cunningham, 66 Cal. 484, 486, 6 P. 135, 136. The California rule is followed in Washington, but again because of the effect given a local practice act. Coyle v. Seattle Elec. Co. 31 Wash. 181, 71 P. 733, 734. The result was not reached without a forceful dissent from Mr. Chief Justice Fullerton [31 Wash. 186] who asserted that the decision was founded on a misapprehension of the statute and that the case should have been decided on the unquestioned rule (see 19 R. C. L. 676) that "a trial court has plenary powers over a cause pending before it until the entry of judgment therein."

In our practice, where motions for new trial are normally made before judgment, and as to a motion so made, there is certainly no reason for denying to the trial court the opportunity to correct its own error, if any. Cases may conceivably arise where error will be obvious, and it may not be the fault of the trial judge. The controlling precedent may not have been called to his attention by counsel. Or pending his consideration of the matter, a new and overruling precedent may be set by a court of last resort requiring a reversal of the first order. Anomalous indeed would be any rule requiring the parties to submit to the delay and expense of an appeal in order to correct such an error. Furthermore, each appealable order as made would take on the finality of a judgment. So instead of the one final and formal adjudication of the whole matter, we would have a succession of judgments in the same case, settling it piecemeal.

A last but general consideration is that "the power to grant new trials is in its inception a common law right, inherent in all courts of general common law jurisdiction, and statutes limiting this power, being in derogation of the common law, should be strictly construed." 20 R. C. L. 218; Anno. 48 A. L. R. 362.

In that connection it should be remembered that motions for a new trial because of newly discovered evidence are in a class by themselves. Worrlein v. Maier, 177 Minn. 474, 225 N. W. 399.

■ There is force in the argument that any order, in form one denying a new trial, even on a second motion, should be appealable under the statute. It was so held in First Nat. Bank v. Briggs, 34 Minn. 266, 26 N. W. 6. If the court has the power to reconsider, as obviously it has, and does so and again denies the motion, why should there not be an appeal, even though the time for appealing from the first order has expired? The answer is in the statute (G. S. 1923 [2 Mason, 1927] § 9497) terminating the right of appeal 30 days from notice of the order. That period cannot be extended by agreement of the parties or order of court. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 318. So where the second motion results only in confirming the original order, which has neither been vacated nor appealed from within the time limited by statute, the right to appeal is gone beyond power of recall. We cannot hold that the right of appeal is revived or continued by what at best is merely an unsuccessful motion to vacate the first order. Our law has long been settled to the contrary. Worrlein v. Maier, 177 Minn. 474, 225 N. W. 399, following Little v. Leighton, 46 Minn. 201, 48 N. W. 778. The contrary rule would permit form to control substance and leave the termination of the time for appeal in the realm of uncertainty and at the mercy of mere implication, whereas by nature it is something which should always be determinable by express and certain record. There would have been no difficulty in this case had there been a vacation (either before or after expiration of the time for appeal) of the order denying defendants' first motion for a new trial, followed by a reconsideration of the merits on defendants' second motion and an order denying that. In such case there could be no question of the right to appeal from the last order.

■ The proper practice is not in doubt. It was followed, unsuccessfully, in Worrlein v. Maier, 177 Minn. 474, 225 N. W. 399. A litigant desiring to renew a motion for new trial should make prompt application for leave to submit the second motion, at the same time asking that if such leave be granted the order denying the first motion be vacated pending the consideration and determination of the second. If on such a motion the judge concludes to

reconsider the issue on the merits, he should promptly and without hesitation vacate his first order. Thereby all doubt would be removed. The needful express and certain record would be made. What was intended and done would be made to appear plainly and all question of the right of appeal from the second order removed. It would not be a mere nonappealable refusal to vacate a prior order, but in real substance an order denying a new trial and so appealable. The expiration of the period of appeal cannot sensibly be left in doubt or at the mercy of an equivocal motion or mere implication from orders not squarely meeting the matter and showing plainly what has been done.

A strict and definite rule is needed. We hold it to be that where the right of appeal from an unvacated appealable order has expired the right of appeal is not revived by a negative order on a second motion for the same relief. It being plain that the court is not required even to entertain a second application for the same relief (J. I. Case T. M. Co. v. Huffman, 86 Minn. 30, 90 N. W. 5) it need not be feared that motions will be repeated in any other than exceptional cases where it is considered the circumstances require it. Trial judges may be depended upon to use their power of review of their own orders only in exceptional cases and successfully to discourage efforts of counsel to invoke it in any other.

In so far as First Nat. Bank v. Briggs, 34 Minn. 266, 26 N. W. 6, expresses views contrary to those above advanced, we do not now consider it a correct statement of the law. It results, from the views thus come to, that plaintiffs' motion to dismiss the appeal of defendants must be granted.

■ The dismissal of defendants' appeal leaves for consideration only the issues presented by that of plaintiffs. Plaintiffs aver illegal expenditure of moneys by the present management, conducted by defendants under a voting trust intended to continue their control of the company and to exclude plaintiffs from any real voice therein. Defendant Cedar Lake Ice & Fuel Company, a Delaware corporation, was organized in 1928 to take over the business of its predecessor, Cedar Lake Ice Company, a Minnesota corporation

which had been in business successfully since 1878. Beginning before 1921 and for many years plaintiffs were directors, first of the old and then of the new company. Associated with them as co-director, vice president, and general counsel of the company was Mr. Simon Meyers of the Minneapolis bar. It is said in argument and not denied that all three "attended practically every meeting of the directors for nine years, and Meyers was at the office a part of each day." He is not party to the action but was a witness for plaintiffs. In January, 1929, friction having arisen and defendants being in position through majority control to do so, elected their own directors and excluded plaintiffs and Mr. Meyers.

The questioned expenditures went in two directions. First there is "an expense fund" of $4,400 expressly appropriated to "defendant Ellison as president" and which he "for and on behalf of said corporation from time to time paid and contributed to certain political parties and certain political candidates for public office * * * and to promote the candidacy and further and promote the interests of certain persons for nomination, election or appointment to political offices." The evidence does not disclose further the objectives of the expenditures. They were in violation of statute. (G. S. 1923 [1 Mason, 1927] § 563.) The other item consists of payments to a "so-called confidential employe." The trial court found nothing reprehensible in these expenditures, although by motion for amended findings plaintiffs asked him to condemn them. But it would not help plaintiffs if we put the case at this point in the posture they want it put. The brief on their behalf asserts that on and between March 15, 1921, and November 30, 1929, defendant Smith (general manager) withdrew from the funds of the company $17,333.32 and paid the same in cash from month to month to a representative of a labor union whose name he refused to disclose. So on plaintiffs' own statement these monthly payments of $166.66 to the mysterious "representative of a labor union" began in 1921 and continued for seven years or more, while they were active directors and their competent and active associate a co-director and legal adviser of the corporation.

442

Decision was for plaintiffs on the item of political expenditures but the other way on those to the "confidential employe." Regular payments for both purposes began as early as May, 1921. Plaintiffs must be charged, as directors through the years up to and including 1928, with responsibility for establishing both practices as fixed policies of the corporation. Neither as directors nor otherwise, until this suit, did they or Mr. Meyers object to the use of corporate funds in either fashion. They do not deny knowledge that the moneys were being used as they were, except for testimony that they did not know that the president, defendant Ellison, was using any of his otherwise inexplicable "expense fund" for political purposes. That testimony "surprised" an experienced trial judge. It would require a rather naive trier of fact not to charge with suspicion, at least, directors of the business capacity and broad experience of plaintiffs. Accurate and complete knowledge of such things is sometimes avoided. It was available here. When such knowledge is so available, but escaped as plaintiffs insist it was here, responsibility follows as surely as though it had been actually gained. (There is no evidence that Mr. Ellison or anyone else ever tried to conceal from the management what was being done.) The practices were established during the time when plaintiffs as directors were responsible for them. They at least acquiesced. Such acquiescence now bars recovery by them, even on behalf of the corporation.

The law is said to be:

"A stockholder who participates as an officer or as a stockholder in illegal or ultra vires transactions on the part of the directors or stockholders, or consents thereto, or who, with full knowledge of the intention to engage in such transactions, acquiesces therein, instead of objecting and taking steps to prevent the same, is estopped to afterwards sue in equity to set the transactions aside; and it can make no difference that he sues on behalf of himself and other stockholders, and that there are other stockholders who might maintain the suit." 6 Fletcher, Corporations, p. 6955, § 4073.

We need not here go far into the numerous cases cited in support. Plaintiffs and defendants between them own or represent, and during all times in question have owned or represented, nearly if not quite all of the stock in defendant corporation. So we need not hold now that in no case will relief be granted acquiescent plaintiffs where the result might benefit others, not parties to the action, innocent of participation in the wrong and in need of relief. But, in Watson v. Nat. L. & T. Co. 189 F. 872, 884, a stockholders' case, the circuit court of appeals of the eighth circuit, said:

"Where a record shows that none of the complainants of record have any right to relief, the court cannot grant relief to those unnamed persons on whose behalf it is claimed the suit is brought."

Laches is a common ground upon which plaintiffs are denied relief. If rather than the merely negative conduct which in the typical case makes laches there is affirmative participation or acquiescence in the wrongful conduct, there is no question as to the propriety of denying relief. Anno. 70 A. L. R. 53.

Where as in this case practices are complained of as unlawful and it appears that plaintiffs themselves instituted and for a long time maintained them, established or actively participated in their establishment as fixed policies of the corporation, they certainly do not come into equity with clean hands in a suit to condemn their successors in corporate management for merely continuing such practices.

"A court of equity will not aid a plaintiff who comes before it with unclean hands, even though by not doing so it deprives itself of the opportunity to prevent the defendant from doing the unclean thing, and thus may be said to indirectly aid the defendant in so doing." Memphis Keeley Institute v. Leslie E. Keeley Co. (C. C. A.) 155 F. 964, 973, 16 L.R.A.(N.S.) 921.

In order that a stockholder plaintiff may recover in such a case as this, the general rule is that he "must be free from participation in the illegality or wrong of which he complains." Coquard v. Nat. Linseed Oil Co. 171 Ill. 480, 484, 49 N. E. 563, 564, followed in

444

Leigh v. Nat. Hollow B. B. Co. 224 Ill. 76, 82, 79 N. E. 318; 21 C. J. 182.

■ There are other details of the case which would stand but do not require extended discussion. Complaint is made and substantial relief was granted plaintiffs because of the too great liberality of the present management in paying excessive compensation to defendant Smith, general manager of defendant corporation. Complaint is also made because of what is said to be grossly excessive insurance carried by the company, some on the life of defendant Smith and some on its physical property. As to that issue, no relief was awarded plaintiffs, although the insurance on the property does look to have been excessive at times. A son of defendant Smith was the insurance broker lucky enough to monopolize the risks for his firm. But we must decline to interfere with the findings below on these fact issues. The matters in controversy were so far within the discretion of the directors and there was considered to be such an absence of proof of wrongdoing that on this point decision went for defendants. On the record we cannot say it was wrong.

Error is assigned, and the point much stressed, on the refusal to appoint a receiver to wind up the business of defendant corporation in this state. Its management has been found innocent of wilful wrong. The opinion below was that the officers, while guilty of mistakes in the particulars mentioned, on the whole had "worked diligently and efficiently and with honesty of purpose." Implicit seems the conclusion that, admonished by the complaints made against them in this action and the judicial confirmation of some of them, the gentlemen in question, so long as they continue in control, will be meticulous in their care to avoid further reasonable ground for criticism.

There is no question that "a state can, without dissolving a corporation, wind up its business in the state, whether the corporation is foreign or domestic." Restatement Conflict of Laws, Am. Law Inst. § 171. But in such cases equity interposes by receivership to conserve, not to destroy. Gross and chronic mismanagement

may well justify such action, particularly if dishonest. Green v. Nat. A. & A. Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784; Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, 159 N. W. 564, Ann. Cas. 1918E, 420. But where, as here, the management is found honest, diligent, and efficient and guilty only of mistakes which have been corrected and not likely to be repeated; where the business is not only solvent and going but also large and important, there being no occasion in the conduct or nature of the business itself to bring it to an end, there is certainly no abuse of discretion in refusing to appoint a receiver to wind it up.

To a substantial degree plaintiffs themselves share responsibility, as already indicated, for establishing and maintaining through many years, as fixed policies of the corporation, two of the practices of which they complain. So far were they party thereto that they cannot urge the result as ground for forfeiture of the company's right to continue business in this state. Leigh v. Nat. Hollow B. B. Co. 224 Ill. 76, 79 N. E. 318.

It follows from these views that the appeal of defendants must be dismissed and the order from which plaintiffs appeal affirmed.

So ordered.