MARY R. DAVIS v. HASSEL M. SMITH AND OTHERS.[1]

November 13, 1931.

No. 28,514.

[1]Reported in 239 N. W. 150.

*George S. Grimes,* for appellant.

*Junell, Oakley, Driscoll & Fletcher* and *Doherty, Rumble, Bunn & Butler,* for respondents.

HILTON, J.

Appeal from an order denying a motion for a new trial.

This action was brought to rescind, cancel, and set aside the sale of 4,228 shares of stock of the Cedar Lake Ice Company, claimed to have been made by the executors of the estate of John B. Robbins to respondents Smith and Mitchell, who were two of the executors of the estate at the time the original transaction was had; also for appropriate remedies in case such sale was set aside.

The respondent Cedar Lake Ice Company is a Minnesota corporation; the Cedar Lake Ice & Fuel Company (with 20,000 shares of capital stock of no par value) is a Delaware corporation, duly qualified and admitted to transact business in the state of Minnesota. In May, 1928, it purchased from the Cedar Lake Ice Company all of the latter's property and business on terms not here important. Each holder of stock in the old company received as part payment a proportionate number of shares in the new company so that the relative holdings of each shareholder remained the same.

John B. Robbins, who was president of the Cedar Lake Ice Company, died testate March 16, 1921. His widow (then Mary S. Robbins, now Mary R. Davis, appellant) was the sole legatee under the will. William D. Mitchell and respondents Hassel M. Smith and John R. Mitchell were appointed and duly qualified as the executors of the estate, and letters testamentary were duly issued to them. William D. Mitchell, who actively handled the administration of the estate, was in no way related to John R. Mitchell.

The Robbins estate was heavily involved; the outstanding certain liabilities exceeded $310,000; there were also heavy contingent lia-

bilities. Robbins had been engaged in various lines of business and controlled several corporations, much of his stock being pledged to secure payment of his indebtedness.

At the time of his death Robbins was the owner of 12,684 shares of the capital stock of the Cedar Lake Ice Company of the par value of $50 a share; 9,946 of these shares of stock, representing a controlling interest in the company, were pledged by him to various parties as security for indebtedness aggregating $119,725.90; the remaining 2,738 shares were clear and unpledged. The stock had value but was not readily marketable. Executor William D. Mitchell, acting for and on behalf of the estate, negotiated a sale of the Robbins stock, and in November, 1921, the executors entered into a written contract signed by them as sellers and James H. Ellison, Simon Meyers, John D. Barrett, and Moses Zimmerman (who were already stockholders in the Cedar Lake Ice Company) as purchasers, by the terms of which the 12,684 shares of stock were sold to the purchasers at $22.50 a share, the total price thereof being $285,390. Under the terms of the sale a cash payment of $133,332.33 was made; and, with money borrowed by the purchasers from a bank and cash contributed by them, the pledged stock was released to them and each of them became the owner of one-fourth thereof.

These four men were apparently the only purchasers that could be found for the stock; there was no intimation or suggestion as to the existence of others. The negotiations for the sale were carried on between William D. Mitchell, representing the executors, and Simon Meyers, representing the group of final purchasers. John R. Mitchell took no part therein, he being in Washington, D. C. acting as a member of the federal reserve board and only rarely in Minnesota during the administration of the estate. Hassel M. Smith lived in Minneapolis and was attending to the activities of the various Robbins corporations and worked under William D. Mitchell in details connected with the administration of the estate. William D. Mitchell talked estate matters over with Smith and secured information from him as to the condition of the company's affairs. Mrs. Robbins, now Mrs. Davis, appellant, was kept

fully advised as to the course of negotiations and acquiesced in the sale.

An assignment was made on the back of the certificates, evidencing the stock sold, signed by the executors as assignors to Ellison, Barrett, Zimmerman, and Meyers, as assignees. At that time no new certificates were issued to them. The four purchasers then owned the controlling interest of the company, and the assigned certificates were placed in a safe of that company.

On January 27, 1922, a written agreement was entered into between Ellison, Meyers, Barrett, and Zimmerman wherein, (following a recital of the reasons therefor) it was agreed that a sale should be made of a certain number of shares not to exceed in number 4,228, (1/3 of the 12,684 shares) at the price paid therefor by them, said sale to be made to not more than two other parties. Neither Smith nor John R. Mitchell knew of this contract until after their discharge as executors. Such a sale was consummated on June 14, 1922, to respondents Smith and the Northland Investment Company, (a Minnesota corporation owned and controlled by John R. Mitchell) ; 2,114 shares to each.

The final decree in the matter of the estate was entered in probate court on April 11, 1922, wherein and whereby all of the estate remaining was assigned, distributed to, and vested in appellant (then Mary S. Robbins) and the executors were duly discharged on May 4, 1922.

The claim of appellant is that the sale to Smith and the investment company was unlawful; that although the sale of the 12,684 shares of stock was ostensibly to Ellison, Barrett, Zimmerman, and Meyers, in truth and in fact 4,228 shares thereof were intended to be and actually were sold to respondents Smith and Mitchell while they were executors of the estate, and that appellant was entitled to have that sale set aside and an accounting had, together with other relief prayed for.

It may be stated that if John R. Mitchell and Hassel M. Smith, while executors, directly or indirectly participated in the purchase of the stock from the Robbins estate, as claimed by appellant, such transaction is voidable. The question as to whether they did so

participate was one to be determined by the trial court from the evidence adduced before it. Was there any such secret interest or secret arrangement? The evidence is in conflict. However it is to be noted that Meyers was the only witness who testified to such claimed participation. His testimony was flatly contradicted in essential particulars by that of John R. Mitchell, Hassel M. Smith, James H. Ellison, Moses Zimmerman, and by inferences proper to be drawn from the testimony of William D. Mitchell.

Much evidence was introduced as to the value of the stock at the time of the sale. Manifestly the price of $22.50 a share was reasonable. The situation of the estate required a prompt sale; no other purchasers could be found. It is needless to state that William D. Mitchell, the executor who attended to practically all of the work, handled the sale in an able, conscientious, and successful manner. He had no knowledge or intimation that his coexecutors would ever become interested with the other four in the stock purchased. John R. Mitchell at the time of Robbins' death was the owner of 1,734 shares of stock in the Cedar Lake Ice Company, held by the Northland Investment Company.

On September 28, 1928, more than six years after the 12,684 shares of stock had become the equal property of the six, Ellison, Smith, and Mitchell, then the holders of the majority of the stock of the Cedar Lake Ice & Fuel Company, entered into a voting trust agreement. Ellison then advised Meyers that he (Meyers), Barrett, and Zimmerman were to be left off the board of directors at the next annual meeting. Meyers had been receiving $4,500 a year as vice president and attorney for the company; he understood that his services and compensation would be discontinued. Considerable hostile feeling was manifested by Meyers. Although knowing of the claimed illegal transaction since June, 1922, Meyers did nothing until December, 1928, when he went to Chicago and interviewed appellant, with whom he then made an arrangement for the institution of the present action. It is not necessary to state the particulars of that arrangement. Appellant knew nothing about the subject matter of this action until informed by. Meyers. The litiga-

tion in Barrett v. Smith, 183 Minn. 431, 237 N. W. 15, was also inspired by Meyers. Certain of the testimony originally given by Meyers at the trial was afterwards materially modified by him, and some of his statements were clearly proved incorrect by documentary evidence.

The only question involved is whether the findings of the trial court have sufficient support in the evidence. Appellant cites National P. & T. Co. v. Gilkey, 182 Minn. 21, 233 N. W. 810, wherein it is stated: "When the evidence taken as a whole is manifestly contrary to a finding, it is an abuse of discretion not to grant a new trial even if there be some evidence tending to sustain the finding." On the state of the record in this case that authority is clearly of no help to appellant.

The court, after a full recital of the necessary facts, finds specifically and at length that the sale of all of the Robbins stock in November, 1921, to Ellison, Barrett, Zimmerman, and Meyers, was made in good faith; that at said time Smith had no share or participation or interest of any character in the purchase and no arrangement or understanding of any character whatsoever with the four purchasers, or any of them, whereby he would in any manner in the future share or participate in or obtain any benefit from the purchase, and had no expectation or hope of sharing, participating, or obtaining such benefit. The same finding was made as to John R. Mitchell and the Northland Investment Company.

It was further found that any discussion or discussions between Ellison and Meyers or any intention or expectation on their part, or on the part of either of them, or any understanding between them, that they would later offer a part of said stock to Smith, John R. Mitchell, or the Northland Investment Company, or any of them, after Smith and Mitchell were discharged as executors, were wholly unknown to Smith, Mitchell, or the Northland Investment Company until after said Smith and Mitchell were discharged as executors; that any such discussions, intention, expectation, or understanding on the part of or between Ellison and Meyers were likewise wholly unknown to John D. Barrett and Moses Zimmerman, and each of them, at the time of the purchase of the stock by

the four. There was a further finding that on June 14, 1922, Smith and the Northland Investment Company (acting through John R. Mitchell) in good faith each purchased 2,114 shares of the stock from Ellison, Barrett, Zimmerman, and Meyers.

All of the findings made by the trial court had ample support in the evidence, and the order dismissing the complaint upon the merits and allowing respondents costs and disbursements was proper.

Affirmed.

