Alberga to Use v. Pa. Indemnity Corp., Appellant.

Argued March 20, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ.

*Francis Chapman,* for appellant.

*Sigmund H. Steinberg,* and with him *William H.
Kresch* and *Blanc & Steinberg,* for appellee.

OPINION BY STADTFELD, J., July 13, 1934:

This was an action in assumpsit by Clifford J. Al-
berga, to the use of Max J. Colton, against Pennsyl-
vania Indemnity Corporation, to recover upon a policy
issued to Clifford J. Alberga, the benefit of which
policy was claimed by Colton, who, at the time of the
accident, was driving Alberga's car, with his permis-
sion. A statement of claim and an affidavit of defense
were filed.

The case came on for trial before LEWIS, J., of the
municipal court of Philadelphia County, without a

jury. The court found for plaintiff in the sum of $685.03; motion for new trial was discharged and judgment entered on the findings in an opinion by the trial judge. From that judgment this appeal was taken.

The facts were as follows: Colton, the use-plaintiff, was proprietor of a store at 53rd and Walnut Streets, in West Philadelphia, at which he sold oil, gas ,or gasoline, tires and other automobile accessories, his gas tanks being in the basement of his place and the pumps on the curb in front. There was no driveway into the place and no automobiles there stored. Alberga stopped at the store and while there asked to have his automobile greased. There being no greasing rack, Colton, the proprietor, said that he would take the machine to another place, conducted by his brothers-in-law, but in his name. He had no money invested in that place but had a limited interest because of the use of his name. Colton asked permission of Alberga to use the machine for the purpose of delivering a tire or tires which he had sold to a customer. While on his way to deliver the tires, on May 19, 1928, he had an accident for which he was sued and a verdict was recovered against him which he paid. He claimed that he was protected by the "Additional Interests" or "Omnibus Coverage Clause" of Alberga's policy which was issued to the latter on July 25, 1927. The policy contained the following provision: "Additional Interests: Coverage herein provided shall be available to any person, firm or corporation legally responsible for the operation of any automobile insured hereunder and to any person or persons riding in or legally operating same with consent of Insured, or, if Insured be an individual, with permission of an adult member (other than a chauffeur or domestic servant) of his household. This coverage shall not extend to any public garage, repair shop, sales agency or service

station and/or employees thereof." The defendant company claimed that the business which Colton was conducting at 53rd and Walnut Streets came within the exceptions contained in the coverage clause in that he was operating a "service station" and that the company was not answerable to him. The sole question is whether he was conducting a "service station" within the meaning of that term as used in the policy. The lower court, at the hearing of the case, under objection, allowed the introduction of expert testimony as to the accepted meaning of this term. In the introduction of this testimony, the trial judge was no doubt influenced by the decision of this court in the case of Kunkle v. Union Casualty Insurance Company, 62 Pa. Superior Ct. 114, decided in March, 1916, in which we stated that "Automobile insurance is a new business, and deals with methods and complicated machinery of recent introduction; the several parts and the operation of the automobile has given to us many new words of indefinite meaning, and it is often necessary to rely on the mechanicians and trained experts to reasonably understand them, and, as in this case, the selected experts often differ in the meaning to be given to words that in other business affairs seem to have a clear and precise significance." But since the decision in that case, great strides have been made in everything pertaining to the use of automobiles and the hazards connected therewith. The business of automobile insurance is no longer a new business, and no longer deals with matters of indefinite meanings as to which it is necessary to rely upon trained experts for information. The unsatisfactory character of this testimony, in the instant case, is at once apparent from an examination thereof. Several witnesses on behalf of plaintiff testified that "an automobile service station, as publicly and generally known in the insurance field, and as a matter of insurance underwriting,

applies to that type of service station where automobiles are driven on or off the premises of the person rendering the service, and physical use of the car is an essential part of the service rendered." Another witness on behalf of plaintiff testified that he did not know of any definition given to the words "service station" by the Association of Insurance Companies or the Bureau of Casualty and Fire Underwriters. All of these witnesses testified that they did not consider that the business of use-plaintiff came within the exceptions mentioned in the "Omnibus Coverage Clause" and that use-plaintiff was covered by the policy. On behalf of defendant, two experts connected with the insurance business testified that the business of use-plaintiff came within the exceptions stated in the policy and that the policy did not cover use-plaintiff's operation of the car. The expert testimony was evidently so unsatisfactory that the trial judge does not refer to it in his opinion. He evidently relied on the definition given in the New Century Dictionary Supplement of the terms "service station" as "a station or establishment for the accommodation of those requiring service of some kind as the supplying of parts for the making of repairs on automobiles, radio apparatus, etc."

We believe that the interpretation by the lower court was too limited and, further, do not think that any expert testimony was necessary in ascertaining the meaning of the words "service station." With the development of the automobile business, they have acquired a well-defined meaning. As stated by our Supreme Court in Foundation and Construction Company, Appellant, v. Franklin Trust Company et al., 307 Pa. 10 (1932), in an opinion by Mr. Justice KEPHART, at p. 15: "The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract

is made, considering all the circumstances surrounding it: McMillin v. Titus, 222 Pa. 500. But, as is stated in Williston, volume 2, section 607, page 1169, 'This rule has never been recognized as authorizing the interpretation of plain and unambiguous language of a written instrument in accordance with any other meaning than that indicated by the words used in the instrument.' " The terms "service station" have had judicial construction by our Supreme Court in the case of Carney v. Penn Oil Company, 291 Pa. 371 (1928). While that case was a bill to restrain, as a nuisance, the operation of a public service gasoline and filling station, yet we believe this becomes immaterial when we consider the interpretation placed on the terms. Quoting from the opinion by Mr. Justice FRAZER: "A 'public service gasoline filling station,' by which expression defendant here designates its plant, is, of course, a place at which gasoline, and usually oils, are stored and supplied, for a price, to the public in general, but it is no less a 'public service station,' as understood within the scope of the automobile business, notwithstanding tires and other accessories are not there sold nor repairs to motor vehicles made. In both kinds of 'stations' the public is served; and it may happen, as it does frequently, that sales of gasoline and oils, repairs to motor vehicles and sales of accessories, are carried on in one and the same station. It is certainly not to be disputed, if we are to be held to a strict observance of the shades of meaning of trade nomenclature in this case, that the place in question here is a public gasoline filling station only, since its business consists in storing and supplying to the public gasoline and oils, although the chancellor did find that extraneous work was carried on, at least to the extent of changing tires on cars of patrons." The court characterized the attempted dis-

tinction between "a public service station" and a "filling station" as a "mere juggling with words."

The same interpretation was put on these terms by the Supreme Court of New Jersey in Bauer v. Board of Fire and Police Commissioners, 102 N. J. Law 235, 238, 132 A. 515, 516, stating: "The words 'service station' mean a place where service is rendered, and taken in connection with the words 'motor vehicle' certainly mean any place where service is customarily rendered to motor vehicles. Undoubtedly the phrase comprehends a place at which automobiles or motor vehicles are given service, even though it consists only of supplying them with oil, gas and accessories."

The lower court endeavored to distinguish a "service station" from the business conducted by use-plaintiff, in that in the former the hazards in handling cars is increased by the operation of the cars by the employees of the garage or service station, while in the business of use-plaintiff, there is no such hazard. This, we believe, becomes immaterial as the terms, as used, are in general understanding applicable to use-plaintiff's business. Whatever reason may have prompted the insertion of the exceptions is of no consequence if the business is included within the exceptions. The parties had a right to write their own contract, and it is not the function of this court to re-write the same or to give any other construction thereto than implied from the plain language used. That this was the understanding of the use-plaintiff himself is evident from his own characterization of his business as "a service station." In a signed statement furnished by him to the defendant company in connection with the accident, he said: "I conduct a service station at 53rd and Walnut Street" and at the end of it, in his own handwriting, "I have read the above and it is all true." He attempted to explain, at the trial, that he did not read the statement and that the words "I con-

duct a service station etc.," were written by the adjuster for the defendant company, and not by the plaintiff.

We do not think that the terms "service station" needed any interpretation, and that the same, in the ordinary understanding, applied to the business conducted by plaintiff and, therefore, came within the exceptions to the Omnibus Coverage Clause and, under it, use-plaintiff was not entitled to recover.

The assignments of error are sustained, judgment reversed and judgment now entered in favor of defendant.