The SOUTHLAND CORPORATION,
et al., Appellants,

v.

The CITY OF MINNEAPOLIS,
Respondent,

The Housing and Redevelopment
Authority in and for the City of
Minneapolis, Respondent.

No. 48901.

Supreme Court of Minnesota.

May 11, 1979.

Grossman, Karlins, Siegel & Brill, J. E. Brill, Jr., and Thomas H. Goodman, Minneapolis, for appellants.

Robert J. Alfton, City Atty., and Mary M. Wahlstrand, Asst. City Atty., Minneapolis, for City of Minneapolis.

· Holmes, Kircher & Graven, David L. Graven, and John M. LeFevre, Jr., Minneapolis, for The Housing and Redevelopment Authority in and for the City of Minneapolis.

Heard before SHERAN, C. J., and TODD and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

The Southland Corporation owns and operates, on a nationwide basis, "7-Eleven" convenience stores. In 1972, it acquired a site from the Housing and Redevelopment Authority in and for the City of Minneapolis (MHRA). It opened its store in 1974 and then sought to install self-service gas pumps which are a permitted use under

Minneapolis zoning ordinances. The city council's action in refusing a pump permit to Southland, based on a deed restriction, was affirmed by the district court. We reverse.

The essential facts are not in dispute. Southland acquired certain unimproved property from MHRA under a purchase agreement dated November 25, 1972. The property is located at 636 Broadway Street Northeast, Minneapolis. The MHRA conveyed the property by a quitclaim deed dated May 19, 1973. Section 3 of the deed provided that the conveyance was subject to a private deed covenant restricting the property to the uses and conditions embodied in the St. Anthony East Urban Renewal Plan.

In the process of negotiating for the property, Southland indicated that it desired to construct and operate a "7-Eleven" store. These stores are relatively small and emphasize convenience, selling a variety of dairy, grocery, and other household items. Drawings and plans of the store were submitted to the MHRA which approved the sale after some modifications, such as certain landscaping and certain building materials. A citizens' group—The Project Area Committee—also participated in the negotiations. Southland never mentioned the sale of self-service gasoline, nor did the MHRA inquire as to sale of gasoline, undoubtedly because at this time self-service gasoline pumps were illegal.

The store was completed and opened for business in March 1974. As of August 1, 1974, the Minnesota Legislature legalized self-service gasoline pumps and, as a result, Southland undertook plans to install such pumps at the store. A joint venture agreement for this purpose was executed with Inter-City Oil on October 11, 1974.

The evidence discloses that eight 7-Eleven stores in Minneapolis presently provide self-service gasoline facilities. The customer drives to the pump, the pump is activated by the store attendant in the building, the customer fills his own tank, and then proceeds inside the store to pay for the gasoline. Other automobile products are available within the store, but they all would have to be used or installed by the customer. There are no air facilities at the gas pumps, nor does 7-Eleven provide any maintenance service.

An application for a license to operate two self-service pumps at the store on Broadway Street was filed with the city of Minneapolis. Area residents were concerned because two gasoline service stations already existed in the immediate vicinity, and they feared problems of appearance, parking, and traffic. The application was first considered by the city's consumer service committee. After hearing from the MHRA, Southland and Inter-City Oil, the committee issued its findings of fact, conclusions of law, and recommendation to the city council. The committee found that the proposed pumps would comply with the applicable zoning laws, but would violate the following deed restriction in Section C.2a. of the St. Anthony East Urban Renewal Plan:

"* * * All business activity except automobile service stations and off-street parking and loading shall be wholly conducted within buildings."

The city adopted the recommendation, and on February 14, 1975, the license was denied.

Southland commenced this action for declaratory judgment and injunctive relief. MHRA interposed a counterclaim for fraudulent misrepresentation, alleging that Southland had failed to disclose its intention to install self-service pumps at the time MHRA conveyed the land to Southland. The matter was tried to the court, and it concluded that Southland did not engage in fraudulent misrepresentation, but that Southland and Inter-City Oil were nevertheless not entitled to operate the pumps. The court found that the self-service pumps would not be an "automobile service station" within the meaning of the deed restriction because no maintenance or other service was afforded and because the 7-Eleven store did not primarily engage in the business of automobile service.

The court entered its original findings of fact, conclusions of law, and order for judgment on September 21, 1977. On Novem-

ber 18, 1977, Southland moved for amended findings and conclusions. On November 25, 1977, judgment was entered pursuant to the order of September 21, 1977. On January 30, 1978, amended findings, conclusions, and order for judgment were entered. Several days prior to expiration of the time for appeal from the November 25, 1977, judgment, Southland advised the clerk of court that it would appeal, but pointed out inconsistencies between the November 25 judgment and the January 30 amended order for judgment. On February 22, 1978, the court entered a second judgment based on the order of January 30. On February 23, 1978—the last day to appeal from the original judgment—the trial court sua sponte vacated the original judgment. Southland then timely appealed from the second judgment of February 22, 1978.

Southland challenges the merits of the trial court's decision concerning the "automobile service station" exception to the prohibition against outdoor business activity. The city challenges the jurisdiction of this court on the grounds that no timely appeal was filed from the original judgment.

The issues presented are:

(1) Does the time limit for appeal to this court commence upon entry of an original judgment where the original judgment is subsequently vacated by the trial court sua sponte to correct discrepancies between the original judgment and a second judgment?

(2) Do self-service gasoline pump facilities at a convenience store qualify as an "automobile service station" within the context of the deed restriction?

■ 1. The challenge to the jurisdiction of this court is premised on the proposition that the trial court could not sua sponte vacate the judgment originally entered pursuant to its order. We reject this proposal. Rule 60.02, Rules of Civil Procedure, does require a motion to obtain relief from a judgment. However, Rule 60.01, Rules of Civil Procedure, provides in part:

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

The trial court was advised by Southland prior to the expiration of time to appeal from the first judgment of possible inconsistencies between the two judgments. The trial court, realizing the possibility of mistake, and within the time to appeal from the first judgment, entered a second judgment pursuant to the amended findings and vacated the first judgment in conformance with the authority of Rule 60.01. At this point, there was only one judgment from which Southland could appeal, and it did so in a timely fashion.

This is not a situation where a trial court order is fashioned for the purpose of extending the time to appeal. See, *Brown's Bay Marine Corp. v. Skrypec,* 271 Minn. 523, 136 N.W.2d 590 (1965); *Tombs v. Ashworth,* 255 Minn. 55, 95 N.W.2d 423 (1959). In the instant case, the original judgment was vacated to correct the inconsistency with the second judgment rather than for the purpose of extending the time for appeal. This court has indicated that when an original order is vacated for a bona fide reason, the time for appeal does not commence from the original order.[1]

---

[1] There are many cases in which this court has held that denial of a motion to vacate an order or judgment does not revive the time to appeal. Implicit in such cases, however, is a recognition that if the original order or judgment is vacated for a valid reason, then the time to appeal does not run from the original order or judgment. In a leading case, *Barrett v. Smith,* 183 Minn. 431, 237 N.W. 15 (1931), second appeal on other grounds, 184 Minn. 107, 237 N.W. 881 (1931), this court addressed the issue of whether the denial of a motion for amended findings or a new trial revived the time for appeal. Interpreting a procedural statute, this court concluded that it did not and said (183 Minn. 440, 237 N.W. 19): "* * * We hold it to be that, where the right of appeal from an *unvacated* appealable order has expired, the right of appeal is not revived by a negative order on a second motion for the same relief." (Italics supplied.)

The court indicated that the appeal from the second order would be timely had the original order been vacated. Cases decided after *Barrett* demonstrate the same implication. *Tryggeseth v. Norcross,* 262 Minn. 440, 115 N.W.2d 56 (1962); *Trickel v. Calvin,* 230 Minn. 322, 41 N.W.2d 426 (1950); *Kolb v. City of Minneapolis,* 229 Minn. 483, 40 N.W.2d 619 (1949).

Moreover, when the circumstances of the case demonstrate that the original judgment is clearly incorrect and not the final judgment, this court has even allowed the appeal when the second judgment only modified rather than vacated the original judgment. In *E.C.I. Corp. v. G.G.C. Co.*, 306 Minn. 433, 436, 237 N.W.2d 627, 629 (1976), this court held:

"* * * We do not consider that the defendant was inexcusably dilatory. When the first judgment was entered it was clearly incorrect; it mentioned on its face that it was entered pursuant to an order which all parties knew had been superseded. It was obvious that the judgment would be corrected so as to comply with the later order of the court, which order was already on file. The judgment was clearly not the final judgment of the court. Even though the defendant should have appealed within 90 days of the first judgment, its appeal was perfected within 90 days of the final judgment and will be allowed."

We hold that the appeal is properly before this court.

■ 2. The decision of the trial court determined only a narrow legal issue; namely, is a self-service gasoline dispensing system at the 7-Eleven store an "automobile service station" within the context of the exception contained in the deed restriction? No issue is raised concerning the trial court's finding that there was no attempt by Southland to defraud the MHRA or conceal facts from it.

Both the city and MHRA agree that virtually identical language in the zoning ordinance permits the operation of self-service pumps at the 7-Eleven store. The applicable language of the zoning ordinance, Minneapolis Ordinance No. 540.1050(3) provides:

"All business, servicing or processing, except for * * * automobile service station operation shall be conducted within completely enclosed buildings."

However, the trial court found, and the city and MHRA argue, that the self-service pumps are not "automobile service stations" within the meaning of the urban renewal plan because no automobile maintenance or service is provided and because the 7-Eleven store is not primarily engaged in the business of servicing automobiles. Such reasoning is inappropriate. Further, we do not have a memorandum from the trial judge explaining the reasons for his decision.

Selling gasoline is commonly understood to be "automobile service" even though no other service is provided. Cases from other jurisdictions in related contexts have generally held that the clause "service stations" includes places where gasoline, oil, and other automobile necessities are sold without a requirement that automobile also be repaired or maintained. See, *Alberga v. Pennsylvania Indemnity Corp.*, 114 Pa.Super. 42, 173 A. 697 (1934) (clause used in insurance policy); *Sun Oil Co. v. Trent Auto Wash, Inc.*, 23 Mich.App. 78, 178 N.W.2d 88 (1970) (clause used in restrictive covenant); *Bauer v. Board of Fire & Police Com'rs.*, 102 N.J.L. 235, 132 A. 515 (1926) (clause used in zoning ordinance).

Moreover, there is no requirement in the urban renewal plan that the business be *primarily* engaged in the servicing of automobiles. The excepting proviso for "automobile service stations" is preceded by the introductory language "All business *activity* * * *." (Italics supplied.) In conformity with the introductory language, the excepting proviso should be read as referring to a type of business activity; that is, "automobile service stations [activity]." Read as such, it is clear that the excepting proviso applies to any sales of gasoline for automobiles regardless of whether the business is primarily engaged in such sales.

In summary, self-service gasoline dispensing facilities were not contemplated at the time the property was sold, since they were illegal in Minnesota. Subsequent legislation authorizes such facilities. To adopt a view that automobile service stations must fit the historic concept of such facilities is to thwart the legislative changes and to ignore the facts as they exist today. The

traditional separation of services is now blurred as many facilities which would originally have qualified as service stations under the requirements of the trial court would be jeopardized because of the variety of merchandising that occurs at such facilities and the elimination of many traditional services at such facilities. Likewise, self-service gasoline sales have become a large part of the industry. We hold that the self-service gasoline dispensing facility proposed by Southland is an automobile service station within the language of the deed restriction, and denial of a pump permit upon the grounds stated by the city council and the trial court is improper.

The MHRA seeks to have this court consider the negotiations and expectations of the parties at the time of the sale. To the extent these matters concern Southland's representations at the time it acquired the property, the trial court's finding of no misrepresentation has not been challenged on this appeal. To the extent these matters concern some other basis for restricting Southland's use of the property, such matters were not considered by the trial court and therefore are not before us on appeal.

Reversed and remanded with instructions to enter a mandatory injunction directing the city of Minneapolis to issue pump permit to Southland at the location in question.

OTIS, J., took no part in the consideration or decision of this case.