81 N.J. Super. 170 (1963)
195 A.2d 205
THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFF-RESPONDENT,
v.
PASQUALE V. PALMIERI, ET AL., DEFENDANTS-RESPONDENTS, AND R. LOUIS RUBERTON, INDIVIDUALLY, AND T/A PARKVIEW DISTRIBUTORS AND NORTH RIVER INSURANCE COMPANY, ETC., DEFENDANTS-APPELLANTS, AND ROSEANN TAGLIAFERRI, ET AL., DEFENDANTS.
ZURICH INSURANCE COMPANY, ETC., PLAINTIFF-RESPONDENT,
v.
PASQUALE V. PALMIERI, ET AL., DEFENDANTS-RESPONDENTS, AND R. LOUIS RUBERTON, INDIVIDUALLY, AND T/A PARKVIEW DISTRIBUTORS AND NORTH RIVER INSURANCE COMPANY, ETC., DEFENDANTS-APPELLANTS, AND ROSEANN TAGLIAFERRI, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided November 15, 1963.
*172 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Sidney M. Schreiber argued the cause for appellants (Messrs. Schreiber, Lancaster & Demos, attorneys; Mr. Schreiber, of counsel; Mr. Leonard I. Weinglass, on the brief).
Mr. Michael Patrick King argued the cause for respondent The Insurance Company of the State of Pennsylvania (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. Burchard Martin argued the cause for respondent Zurich Insurance Company and Sinclair Refining Company (Messrs. Taylor, Bischoff, Neutze & Williams, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendants R. Louis Ruberton, individually and t/a Parkview Distributors (hereinafter "Ruberton"), and North River Insurance Company (hereinafter "North River") appeal from a declaratory judgment adverse to them entered in the Chancery Division.
The Insurance Company of the State of Pennsylvania (hereinafter "Pennsylvania") and Zurich Insurance Company (hereinafter "Zurich") sought declaratory judgments under N.J.S. 2A:16-50 et seq., fixing their respective obligations and that of North River under certain insurance policies issued by them, by reason of a negligence action instituted by Roseann Tagliaferri and her husband against their respective insureds in the United States District Court for the District of New Jersey. Pennsylvania insured Pasquale V. Palmieri; Zurich insured Sinclair Refining Company; and North River insured Ruberton.
The facts underlying the insurance controversy are not in dispute. Palmieri was the sole proprietor of a service station in Waterford, New Jersey. On Sunday, April 3, 1960, he noticed that the supply of gasoline in the station was low. He phoned his distributor, Ruberton, who marketed gasoline *173 for Sinclair Refining Company, and asked Ruberton if he would deliver an order of gasoline to him that day. Ruberton told him that he had company for dinner, was going out later and would be unable personally to make the delivery. Whereupon, Palmieri asked Ruberton if it would "be all right if I came down and picked the truck up and made my own delivery." Ruberton consented. Palmieri came to Ruberton's house and picked up the keys, went to the plant, loaded Ruberton's truck with gasoline, drove the truck to his own service station and unloaded 1,500 gallons of gasoline thereat and one case of motor oil, which he had also purchased from Ruberton, at a total cost of $367.90. Palmieri, pursuant to his understanding with Ruberton that he would return the truck at his convenience within the same day, was driving the truck back to Ruberton's plant by a direct route when the accident occurred for which the Tagliaferris brought their suit in the Federal Court. Following the accident Palmieri returned the tank truck to Ruberton's plant.
Before going into the service station business Palmieri had worked for Ruberton as a driver. Ruberton ordinarily delivered gasoline to Palmieri's service station. On several prior occasions when Palmieri was in need of gasoline and Ruberton was preoccupied and unable personally to make the delivery, Palmieri himself made the deliveries in Ruberton's truck with Ruberton's approval. Palmieri was the only customer allowed by Ruberton to make such a delivery and this was simply because of Palmieri's previous employment by Ruberton. In making such deliveries Palmieri received no compensation and was charged the regular rate for the gasoline purchased by him.
The Tagliaferris charged in their District Court complaint that at the time of the accident Palmieri was acting as an employee of Ruberton and that, in turn, Sinclair Refining Company had employed Ruberton as its representative and he was then and there acting within the scope of his employment in the business of Sinclair. However, the declaratory judgment proceedings in the Chancery Division did not assume *174 any such relationships, but proceeded on the assumptions that Palmieri was the sole proprietor of his own service station and happened to be driving Ruberton's truck at the time of the accident under the circumstances above mentioned, and that Ruberton marketed Sinclair's products, not as an employee of Sinclair, but in the conduct of his own independent business.
North River contends that the accident arose out of Palmieri's operation of his service station and that its policy issued to Ruberton did not insure Palmieri because of the following language therein:
"III. DEFINITION OF INSURED. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply: (1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, * * *" (Emphasis added)
Pennsylvania's policy insured Palmieri against liability arising out of the conduct of his service station and contained this provision:
"Division 2  Premises  Operations 
Automobiles Not Owned or Hired.
The ownership, maintenance, or use of the premises for the purpose of * * * [a] service station * * * and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured, * * *."
The Pennsylvania policy, as well as that issued by North River, contained the standard "Other Insurance" clause.
The policy of Zurich, liability carrier for Sinclair, provides that its insurance "shall be excess insurance over any other valid and collectible insurance." Therefore, its basic position *175 is that its responsibility is only for losses in excess of the North River and Pennsylvania policies.
The Chancery Division, 75 N.J. Super. 350 (1962), held that the accident was not one "arising out of the operation" of the service station, so that the North River exclusion clause did not apply. At the same time, it found that the accident did occur in the course of an operation "necessary or incidental" to the service station, so that the Pennsylvania coverage provision applied. Since both policies contained the standard clause as to "Other Insurance," it determined that both of these companies should bear co-responsibility for the defense of the defendants in the District Court action. It also adjudged that Pennsylvania and North River shall be liable for any judgment obtained against one or more of the defendants by the Tagliaferris, North River to pay such proportion of the judgment as the applicable limit of its liability shall bear to the total applicable limit of both Pennsylvania and North River; Pennsylvania to pay the balance of the judgment to the extent of the applicable limit of its liability.
As to Zurich, the Chancery Division held that it shall not become liable for the defense of its named insured, Sinclair Refining Company, in the pending District Court action, or for any contribution toward any judgment rendered against Sinclair therein, until the applicable limits of liability of the aforesaid policies of Pennsylvania and North River are exhausted, and then only in the amount of any excess to the extent of the applicable limits of liability in its policy as provided by the "Other Insurance" clause of its said policy.
We limit our review to North River's claim of error because Pennsylvania and Zurich do not question the correctness of the declaratory judgment.
North River's argument runs as follows: Palmieri operated a service station. He needed gasoline for his tanks and used the truck in question to obtain that gasoline. He was returning the truck to the same location from which he had obtained the gasoline when the accident occurred. Therefore, Palmieri was not an "insured" within the meaning of the *176 North River policy, but was excluded by the following policy provision:
"The insurance * * * does not apply: (1) to any person * * * operating * * * [a] service station * * * with respect to any accident arising out of the operation thereof * * *."
In brief, North River maintains that accidents which occur while the service station owner is involved in a mission concerning supplies for use in the service station arise out of the operation thereof.
In Canadian Indemnity Company v. Western National Insurance Company, 134 Cal. App.2d 512, 286 P.2d 532 (D. Ct. App. 1955), a garage owner was involved in an accident while using a borrowed car to obtain repair parts from a supplier. The insurance policy covering the borrowed automobile contained an exclusionary provision like that in the policy herein. It was held that the accident arose out of the operation of the garage and, accordingly, the garage owner was not covered under the policy. The court said: "The activity of securing repair parts is part of the operation of a garage business." On analogous facts, a similar result was reached in Hunt v. Richardson, 212 N.C. 28, 192 S.E. 843 (Sup. Ct. 1937). So, too, in Alberga to Use of Colton v. Pennsylvania Indemnity Corp., 114 Pa. Super. 42, 173 A. 697 (Sup. Ct. 1934), the policy's exclusion clause was held applicable where the operator of a service station was involved in an accident while driving a vehicle borrowed from the named insured to deliver tires.
However, the facts in the instant case are different in one important respect. In the cited cases the named insured was a gratuitous lender of his automobile and its use by the garage or service station owner was for his benefit only and part of the operation of his business. Here, the gasoline supplies were being delivered to the service station by the supplier in the supplier's own tank truck, a customary, necessary and incidental operation of the supplier's business. If Ruberton himself had been driving that truck at the time of *177 the accident, as he normally would have been but for the fact that it was Sunday and he was preoccupied, coverage under the North River policy would be beyond dispute. So, too, there would clearly be coverage if some other driver, besides Palmieri, had driven Ruberton's truck at his request in making the delivery to Palmieri's station. Should the mere happenstance that Palmieri, a former employee, was immediately available and drove Ruberton's truck with his authority and permission destroy coverage under the North River policy, a coverage ordinarily accruing in favor of the operator, simply because this authorized operator was also the consignee? We think not.
In Allen v. Travelers Indemnity Co., 108 Vt. 317, 187 A. 512, 514 (Sup. Ct. 1936), the court said:
"No precise definition of the phrase `arising out of the operation' of a public garage or automobile repair shop can be attempted. It all depends upon the circumstances of the particular case, the nature of the transaction, its connection with the business, and whether it can be said to be a natural and necessary incident or consequence of the operation, though not foreseen or expected."
That language is equally appropriate to service stations, similarly referred to in the same exclusion clause. Can it be reasonably said that a service station owner's driving of his supplier's gasoline tank truck is a natural and necessary incident or consequence of the operation of the service station?
Palmieri was undoubtedly interested in obtaining the gasoline from Ruberton to replenish his diminishing supply and, presumably, might have been forced to close his service station earlier than usual on that Sunday, if the requested delivery had not been made. But the function involved in making that delivery and returning the empty truck to Ruberton's plant was not a natural and necessary incident or consequence "arising out of the operation" of Palmieri's service station. Rather, the driving of Ruberton's truck by Palmieri, or by anyone else, in making the delivery was in furtherance of Ruberton's gasoline distribution business, the performance of *178 a contract by Ruberton to accommodate a regular customer in whose future gasoline and motor oil requirements Ruberton had a personal business interest.
North River contends that the very purpose of the exclusion in the North River policy was to avoid overlapping coverage with a garage liability policy, such as the one Pennsylvania issued to Palmieri. It claims that whenever the garage liability policy has applied, the exclusion clause in the automobile liability policy has likewise come into play. It cites Canadian Indemnity Company v. Western National Insurance Company, supra, and Kenner v. Century Indemnity Co., 320 Mass. 6, 67 N.E.2d 769, 165 A.L.R. 1463 (Sup. Jud. Ct. 1946). These cases do not stand for the broad proposition asserted by North River. They hold only that the garage owner, or his employee, under the particular facts involved, was using the borrowed car in the garage business  in the one case to get needed repair parts, and in the other, to test a customer's car after repairs  so that the accident "arose out of the operation" of the garage. Accordingly, the courts concluded that such an operation fell within the exclusion of the lender's automobile policy. There was no declaration that there may not be overlapping coverage. On the contrary, Kenner recognized the possibility that "an injured person may have double security." 67 N.E.2d, at p. 773.
Even were there doubt as to North River's coverage of Palmieri, the decision of the trial court is consistent with the policy of construing insurance contracts liberally in favor of coverage and strictly in the interpretation of exclusionary provisions. "If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied." Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, 35 N.J. 1, 7 (1961). Further, "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or *179 exception, designed to limit the protection, a strict interpretation is applied." Id., at p. 8.
"[I]n construing contractual instruments, our courts will broadly search for the probable common intent of the parties, will consider their relations, the attendant circumstances and the objectives they were trying to obtain, and will endeavor to find a reasonable meaning `in keeping with the express general purpose.'" Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567 (1962). In our view, it was the probable common intent of Ruberton and North River that the latter was insuring Ruberton and any authorized driver of Ruberton's tank truck while the truck was being operated for Ruberton and in the furtherance of his business of distributing gasoline to service stations. That Ruberton's authorized driver incidentally happened to be the consignee did not, under a reasonable and liberal interpretation of the policy, bring into play the clause excluding coverage where the insured vehicle is involved in an accident "arising out of the operation" of a service station.
Under its second point, North River argues that Sinclair Refining Company is not entitled to coverage under the North River policy. It reasons that, if Palmieri is not entitled to coverage, Sinclair is similarly not entitled "because Palmieri was its agent or employee." Having held that Palmieri was entitled to coverage, North River's assumed premise lacks support. Secondly, the matter was not submitted on any assumption that Palmieri was Sinclair's agent or employee. On the contrary, North River's statement of facts recited that "Palmieri was the sole proprietor" of the service station. No further reason is suggested by North River why the trial court's interpretation of Zurich's policy as providing excess coverage only was improper. Accordingly, we find no substantial merit in this secondary issue raised by North River.
For the reasons above stated, the judgment of the Chancery Division is affirmed.