249 N.J. Super. 31 (1991)
591 A.2d 1356
RAQUEL BELLO, AS ADMINISTRATRIX OF THE ESTATE OF OWEN BELLO, AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF OWEN BELLO, PLAINTIFF-APPELLANT,
v.
HURLEY LIMOUSINES, INC., AND ERIC BELLO AND NANCY BELLO, DEFENDANTS, AND FIREMAN'S FUND INSURANCE COMPANY AND ALLSTATE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1990.
Decided June 13, 1991.
*33 Before Judges Michels, Gruccio and D'Annunzio.
Anthony J. Riposta argued the cause for appellant.
Linda A. Palazzolo argued the cause for respondent Fireman's Fund Insurance Company (Connell, Foley & Geiser, attorneys; Linda A. Palazzolo, of counsel; Carol M. Romano, on the brief).
Frances J. Panzini-Romeo argued the cause for respondent Allstate Insurance Company (O'Donnell, Kennedy, Vespole & Piechta, attorneys; Frances J. Panzini-Romeo, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Raquel Bello, as general administratrix and as administratrix ad prosequendum of the Estate of Owen Bello, appeals from summary judgments of the Law Division entered in favor of defendants Fireman's Fund Insurance Company (Fireman's Fund) and Allstate Insurance Company (Allstate) in this action to recover personal injury protection benefits arising out of a pedestrian/motor vehicle accident.
Being no ordinary pedestrian-motor vehicle accident, it is appropriate to recount the facts giving rise to this appeal. On November 1, 1986, Owen Bello owned an automobile that he purchased, registered and insured in Florida. Allstate, which is authorized to transact automobile and motor vehicle liability insurance business in Florida and New Jersey, issued its automobile policy to Owen Bello in Florida prior to November 1, 1986. After Allstate issued the policy, Owen Bello moved to New Jersey.
On November 1, 1986, Eric Bello, Owen Bello's brother, was employed by defendant Hurley Limousines, Inc. (Hurley), which owned a 1983 Chevrolet four-door sedan (motor vehicle). The Hurley motor vehicle was registered as a limousine and bore the "OL," omnibus livery, license plates. Hurley used the *34 motor vehicle as a limousine to transport passengers for consideration and apparently it was rented with a driver employed by Hurley. On November 1, 1986, Fireman's Fund insured the Hurley motor vehicle.
Sometime before November 1, 1986 and while living in New Jersey, Owen Bello separated from his wife, Nancy. Owen Bello had custody of the two infant children born of the marriage, Justine and Katrina, and lived with them in Rahway, New Jersey. At the time, Nancy was involved in an adulterous relationship with Eric Bello and they shared an apartment in Roselle Park, New Jersey.
At about 1:00 p.m. on Sunday, November 1, 1986, Owen Bello, Eric Bello, Nancy and the two infant children were in Rahway Park. Owen Bello stood outside of his parked automobile, which had its engine off, looking in the trunk for a band-aid for his daughter Katrina, who stood with him. The Hurley motor vehicle was parked behind Owen Bello's automobile with its engine off. Eric Bello sat in the driver's seat and Nancy sat in the front passenger seat with Justine on her lap. Eric Bello then started the engine of the Hurley motor vehicle with Nancy and Justine inside. Apparently perceiving this, Owen Bello began to bang and pull on the partially opened driver's side window of the Hurley motor vehicle. Eric Bello immediately drove the Hurley motor vehicle forward causing Owen Bello's left arm to catch in the partially opened window. Eric Bello continued to drive forward with Owen Bello caught on the outside of the Hurley motor vehicle. After the Hurley motor vehicle traveled approximately 100 feet with Eric Bello "accelerating and decelerating" the Hurley motor vehicle to dislodge his brother, Owen Bello was fully freed. Owen Bello then "flipped into the air, bounced onto and off the vehicle's trunk and onto the roadway, sustaining massive head injuries." Owen Bello was rendered unconscious and remained in a coma from November 1, 1986, the date of the accident, until his death from complications of his original injuries on May 25, 1988.
*35 This action was instituted against Eric Bello, Hurley and Nancy Bello to recover damages for Owen Bello's personal injuries sustained as a result of this accident. Subsequently, the complaint was amended to seek personal injury protection benefits under both Fireman's Fund's and Allstate's insurance policies. While the matter was pending below, Owen Bello died and Raquel Bello, Owen Bello's sister, was appointed administratrix ad prosequendum and general administratrix of Owen Bello's estate. All defendants filed answers with the exception of Nancy Bello, against whom a default judgment was entered. Fireman's Fund moved for summary judgment, contending that it was not responsible for personal injury protection benefits because its policy specifically excluded recovery for such benefits when the injuries incurred were the result of intentional acts. Allstate moved for summary judgment, contending that it was not under any liability to pay personal injury protection benefits under its policy because the accident involved a limousine, not an automobile as defined by N.J.S.A. 39:6A-2a. Plaintiff filed a cross-motion for summary judgment, seeking a declaration of coverage under both policies.
At the conclusion of the argument, the trial court granted the motions of Fireman's Fund and Allstate and denied the motion of plaintiff. With respect to Fireman's Fund, the trial court held that coverage was excluded because Owen Bello's conduct contributed to his bodily injuries. According to the trial court "[t]he uncontroverted facts of this tragic event indicate [that Owen Bello] was attempting to forcibly keep the vehicle and its passenger from leaving the area, running along side the accelerating vehicle, holding on, and eventually falling away from the moving vehicle." With respect to Allstate, the trial court held that it was not under any liability to plaintiff because the accident involved a limousine, not an automobile, as defined by N.J.S.A. 39:6A-2a. Thereafter, plaintiff settled the claims against Hurley and Eric Bello with Fireman's Fund for its liability insurance policy limits of $500,000. This appeal followed.

*36 I.
With respect to plaintiff's appeal as to Allstate, the critical issue is whether the motor vehicle owned by Hurley and operated by Eric Bello was an "automobile" as defined by the New Jersey Automobile Reparation Reform Act (Act). N.J.S.A. 39:6A-1 to -35. N.J.S.A. 39:6A-4 of the Act, as it was in effect at the time of the accident, mandated personal injury protection coverage and provided:
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. [Emphasis added].
As used in the Act, N.J.S.A. 39:6A-2a defines "automobile" as:
"Automobile" means a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver. ... [Emphasis added].
It is fundamental that "the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." Sheeran v. Nationwide Mutual Insurance Co., Inc., 80 N.J. 548, 556, 404 A.2d 625 (1979) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917)). See State v. Maguire, 84 N.J. 508, 528, 423 A.2d 294 (1980); Vreeland v. Byrne, 72 N.J. 292, 302, 370 A.2d 825 (1977); DeHart v. Bambrick, 177 N.J. Super. 541, 549, 427 A.2d 113 (App.Div. 1981). See also 2A Sutherland, *37 Statutory Construction, § 46.01 at 48-49 (C. Sands 4th Ed. 1973).
This principle applied here leaves no room for judicial interpretation. The plain language of N.J.S.A. 39:6A-2a clearly eliminates the Hurley motor vehicle as an automobile for purposes of the Act. N.J.S.A. 39:6A-2a defines automobile in clear and unambiguous terms as a private passenger or station wagon type that is owned or hired but is neither used as a public or livery conveyance for passengers nor rented to others with a driver. Although the Hurley motor vehicle was a private passenger type automobile, it was registered and used as a public or livery conveyance for passengers and rented to others with a driver. Its status was a limousine, not an automobile.
The motor vehicle's classification as a public or livery conveyance for passengers does not change by its temporary or transitory use for some other purpose. Rather, the motor vehicle's general status controls its classification. Had the Legislature intended that the motor vehicle's use at the precise time of the accident controlled its classification, it is reasonable to conclude that the Legislature would have included language to that effect in the Act. The Legislature did not include such language and in our view it is clear that the Legislature did not intend to do so. Consequently, Eric Bello's operation of the Hurley motor vehicle for his personal use at the time of the accident did not change its classification to an automobile within the meaning of the Act.
Moreover, classifying vehicles by their use at the precise time of the accident would create chaos and undermine the purposes of the Act. New Jersey's no-fault law is designed to limit litigation in the area of personal injury claims by providing a system of personal injury protection regardless of fault. One of the no-fault law's purposes is to insure prompt payment of medical and hospital bills, without the injured party having to engage in or await the outcome of lengthy and costly litigation. *38 In our view, it would not be in the public interest to classify vehicles on the basis of their use at the precise time of the accident, and certainly, such manner of classification was not intended by the Legislature in passing the Act.
Accordingly, the trial court properly held that the Allstate policy did not provide personal injury protection benefits to plaintiff for Owen Bello's injuries sustained in this accident.

II.
However, the trial court erred in granting summary judgment in favor of Fireman's Fund. Because Fireman's Fund's policy did not insure an automobile within the meaning of N.J.S.A. 39:6A-2a, Fireman's Fund's personal injury protection coverage was mandated by N.J.S.A. 17:28-1.3. The critical issue on this appeal, therefore, is whether the Fireman's Fund policy exclusions bar Owen Bello's estate from collecting personal injury protection benefits.
Summary judgment is a stringent remedy and should not be granted unless the pleadings, affidavits and other papers show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Moreover, where, as here, a subjective element is involved, such as Owen Bello's intent when he banged and pulled on the window of the Hurley motor vehicle, summary judgment is to be granted with caution. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76, 110 A.2d 24 (1954); Exxon Corporation v. Wagner, 154 N.J. Super. 538, 541, 382 A.2d 45 (App.Div. 1977); Allen v. Planning Bd. of Evesham Tp., 137 N.J. Super. 359, 363-64, 349 A.2d 99 (App.Div. 1975). In evaluating such a motion, we are guided by the standards set forth in United Advertising Corp. v. Metuchen, 35 N.J. 193, 195-96, 172 A.2d 429 (1961), reaff'd, 42 N.J. 1, 198 A.2d 447 (1964), which stated:
Although it must be recognized that the summary judgment procedure has a needful place in our judicial system as a protection "against groundless claims *39 and frivolous defenses, not only to save antagonists the expense of protracted litigation but also to reserve judicial manpower and facilities to cases which meritoriously command attention," Robbins v. Jersey City, 23 N.J. 229 [128 A.2d 673] (1957), sight should never be lost of the fact that such procedure is no substitute for a full plenary trial. Battle v. General Cellulose Co., 23 N.J. 538 [129 A.2d 865] (1957). Only where it is palpably disclosed that there is no genuine issue of fact and the movant is entitled to a judgment as a matter of law should the motion be granted, R.R. 4:58. It is the movant's burden to exclude any reasonable doubt as to the existence of a genuine issue of material fact. All inferences of doubt are drawn in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 [110 A.2d 24] (1954); Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400 [142 A.2d 861] (1958).
In resolving the motion, the moving papers and all inferences therefrom are to be considered in the light most favorable to the party opposing the motion. Ruvolo v. American Cas. Co., 39 N.J. 490, 499, 189 A.2d 204 (1963); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. at 75, 110 A.2d 24. If there is the slightest doubt as to the existence of a material issue of fact, the motion should be denied. Garley v. Waddington, 177 N.J. Super. 173, 179, 425 A.2d 1084 (App.Div. 1981). As stated in Brenner and Co. v. Perl, 72 N.J. Super. 160, 167-68, 178 A.2d 19 (App.Div. 1962):
The factual issues ... involved cannot be resolved on the basis of affidavits and depositions where inferences for and against the truth of facts grounding the existence of a cause of action arise therefrom, no matter how strongly they point in one direction or the other.
The point is that summary judgment should not be granted unless the right thereto appears so clearly as to leave no room for controversy. Considered in this light, we are satisfied that the trial court erred in granting summary judgment in favor of Fireman's Fund. N.J.S.A. 17:28-1.3[1] mandated personal injury protection benefits coverage and provided that:
Every liability insurance policy issued in this State on a motor vehicle, exclusive of an automobile as defined in section 2 of P.L. 1972, c. 70 (C. 39:6A-2), but including a motorcycle, insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, operation, maintenance, or use of a motor *40 vehicle shall provide personal injury protection coverage benefits, in accordance with section 4 of P.L. 1972, c. 70 (C. 39:6A-4), to pedestrians who sustain bodily injury in the State caused by the named insured's motor vehicle or by being struck by an object propelled by or from the motor vehicle.
The pertinent exclusionary provisions of the policy relied upon by the trial court in determining that the Fireman's Fund did not provide personal injury protection benefits to Owen Bello, read:
Exclusions
The insurance under this endorsement does not apply:
(a) to bodily injury to a person whose conduct contributed to the injury in any of the following ways:
(1) while committing a high misdemeanor or a felony or seeking to avoid lawful apprehension or arrest by a policy [sic] officer, or
(2) while acting with specific intent to cause injury or damage to himself or others;
See N.J.S.A. 39:6A-7 (authorizing the above exclusions). Contrary to plaintiff's argument, the exclusions authorized by N.J.S.A. 39:6A-7 apply to N.J.S.A. 17:28-1.3. N.J.S.A. 39:6A-4 and N.J.S.A. 39:6A-7 are in pari materia with N.J.S.A. 17:28-1.3 and therefore, must be read together.
Our function in construing these provisions of the Fireman's Fund insurance policy, as with any other contract, is to search broadly for the probable common intent of the parties to find a reasonable meaning in keeping with the express general purposes thereof. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Tooker v. Hartford Acc. & Indem. Co., 128 N.J. Super. 217, 222-23, 319 A.2d 743 (App.Div. 1974); The Insurance Co. of State of Penna. v. Palmieri, 81 N.J. Super. 170, 179, 195 A.2d 205 (App.Div. 1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964). In this pursuit, a broad and liberal view should be taken so that the policy is construed in favor of the insured. In addition, we must also be mindful of the corollary rule of construction that if the clause in question is one of exclusion or exception designed to limit the protection afforded by the general coverage provisions of the policy, a strict interpretation is in order. *41 See Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 574, 267 A.2d 527 (1970); Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8, 170 A.2d 800 (1961).
With these principles in mind, there cannot be the slightest doubt that genuine issues of material fact exist as to whether Owen Bello was acting with specific intent to cause injury or damage to himself or others at the time he sustained his bodily injury. In sum, reasonable minds could differ as to Owen Bello's specific intent when he banged and pulled on the window of the moving Hurley motor vehicle. The record submitted on the motions for summary judgment does no more than create genuine issues of material fact, precluding the granting of summary judgment in favor of either plaintiff or Fireman's Fund. In any event, Fireman's Fund's failure to exclude all reasonable doubt as to these material factual issues mandates a plenary hearing.
Accordingly, the summary judgment in favor of Fireman's Fund is reversed and the matter remanded to the trial court for further proceedings. We do not retain jurisdiction.
NOTES
[1] N.J.S.A. 17:28-1.3 was amended, effective after the date of the accident herein, to include a motorized bicycle.