**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0943-24

JOLESSA A. WADE,

      Plaintiff-Appellant,

v.

JUDEANN M. STRAUSS,

      Defendant,

and

WILLIAM STRAUSS and
ALLSTATE NEW JERSEY
INSURANCE COMPANY,

      Defendants-Respondents.

_____

        Submitted January 13, 2026 – Decided February 12, 2026

        Before Judges Rose and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5353-21.

        Law Offices of Karim Arzadi, attorneys for appellant (Michele Labrada, of counsel and on the briefs).

Dwyer Connell & Lisbona LLP, attorneys for respondent William Strauss (Donald S. DeDio and Lauren B. Connell Madia, on the brief).

Goetz Schenker Blee & Wiederhorn, LLP, attorneys for respondent Allstate New Jersey Insurance Company (Daniel W. Szep, of counsel and on the brief).

PER CURIAM

Plaintiff Jolessa A. Wade appeals from the October 25, 2024 summary judgment dismissal of her first amended complaint against defendants William Strauss and Allstate New Jersey Insurance Company. In her complaint, plaintiff sought economic and noneconomic damages allegedly sustained in a motor vehicle accident while she was employed as an Uber rideshare driver. Because plaintiff failed to maintain personal automobile liability insurance on her car, the motion court determined she was barred from maintaining her claims pursuant to the New Jersey Automobile Reparation Reform Act (No-Fault Act), N.J.S.A. 39:6A-1 to -35.

Plaintiff does not dispute her personal automobile liability insurance lapsed for nonpayment of the premium before the accident occurred. Citing N.J.S.A. 39:5H-2 of the Transportation Network Company Safety and Regulatory Act (TNCSRA), N.J.S.A. 39:5H-1 to -27, plaintiff instead maintains, at the time of the accident, her "personal vehicle" did not fall within the

2

A-0943-24

definition of an "automobile" under N.J.S.A. 39:6A-2 of the No-Fault Act. Plaintiff therefore contends she was not required to maintain personal injury protection (PIP) benefits and, as such, the litigation bar set forth in N.J.S.A. 39:6A-4.5(a) of the No-Fault Act does not prohibit her causes of action against defendants.

Having considered plaintiff's contentions in view of the limited record before the motion court, we conclude genuine issues of material fact precluded summary judgment. We therefore reverse the October 25, 2024 order and remand for further proceedings consistent with this opinion.

I.

We summarize the facts from the motion record in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). The accident occurred in the afternoon of Wednesday, July 10, 2019, while plaintiff was operating her Mazda CX7 on Clinton Street in Newark. At the time of the incident, plaintiff was providing a prearranged ride to a passenger who hired her through the Uber ride-sharing application.

A-0943-24

William[1] remained at the scene and reported the accident to police. According to the responding officer's report, William claimed he was exiting a parking lot on Clinton Street, while driving a Lexis RX350 registered to Judeann M. Strauss, when the Lexis was struck by another car whose operator fled the scene.

Plaintiff left the accident location, but drove to the local police precinct to report the accident. According to the police report she filed, plaintiff claimed her car was struck by another car as the driver exited the parking lot.

In her first amended complaint, plaintiff asserted a single cause of action against William and Judeann seeking damages for serious permanent physical injuries sustained as the proximate cause of their negligence.[2] In her second count, plaintiff alleged "[d]efendants, Uber Technologies, Inc. and/or Rasier, LLC, maintained an automobile insurance policy with . . . [d]efendant,

---

[1] Because the individual defendants share the same surname, we use their first names. We intend no disrespect.

[2] The initial complaint sought similar relief, but did not name William. After the first amended complaint was filed, the motion court granted Judeann's unopposed summary judgment motion and dismissed plaintiff's claims against Judeann with prejudice for lack of agency. Judeann is not a party to this appeal.

A-0943-24

Allstate."[3] Plaintiff claimed Allstate "wrongfully failed and refused to provide uninsured/underinsured benefits to [p]laintiff and to intervene in [p]laintiff's underlying action."

During discovery plaintiff asserted, as an Uber driver at the time of the accident, she was insured under Uber policy's issued by Allstate. As reflected in the declaration sheet, the Allstate policy provided: $1.5 million in liability coverage; $10,000 in auto medical payments; $1.5 million in uninsured motorist coverage; and $1.5 million in underinsured motorist coverage.[4] The declaration sheet does not reflect Allstate provided PIP coverage.

At deposition, plaintiff testified she drove the Mazda only while working for Uber and not for personal use. It is undisputed plaintiff's automobile liability insurance lapsed prior to the accident for nonpayment of the premium. Plaintiff further acknowledged while en route to the police precinct to file an accident report, she did not utilize the Uber application. After filing the report, plaintiff

---

[3] Plaintiff's reference to Uber and Rasier as defendants appears to reflect her underlying complaint as Uber and Rasier were not listed in the caption of the initial or first amended complaint. The underlying complaint was not provided on appeal. Neither Uber nor Rasier is a party to this appeal.

[4] The Allstate policy was not included in the record provided on appeal.

A-0943-24

"took the bus" home, leaving her car "[o]n the street" for "maybe like a week until [she] was able to get money to get insurance" for her car.

Prior to the close of discovery, William moved for summary judgment and Allstate thereafter joined his motion. Following arguments on the motion, the court reserved decision. On October 25, 2024, the court issued a written decision and accompanying order granting summary judgment in favor of William and Allstate, thereby dismissing plaintiff's complaint with prejudice.

In its decision, the court addressed the parties' arguments pursuant to its interpretation of the governing law. The court determined, at the time of the accident, plaintiff was driving an "automobile" as defined in N.J.S.A. 39:6A-2 of the No-Fault Act, and not – as plaintiff contended – a "personal vehicle" as defined in the TNCSRA.

Noting plaintiff did not dispute she failed to maintain insurance on her Mazda, the court found she therefore failed to comply with TNCSRA's requirements under N.J.S.A. 39:5H-16 and -19, that a transportation network company (TNC) driver possess proof of valid automobile liability insurance. Because plaintiff allowed her automobile liability insurance to lapse, the court determined plaintiff was not authorized to utilize Uber's digital network as a TNC driver or provide prearranged rides at the time of the accident under

6

N.J.S.A. 39:5H-20(f). The court reasoned "[p]laintiff c[ould not] violate the terms of the TNC[SRA] and seek refuge in that act to excuse a violation of New Jersey's compulsory automobile insurance laws." The court found plaintiff's argument "at odds with the overall statutory scheme of New Jersey's automobile liability insurance laws."

Finding no genuine issues of fact precluded judgment as a matter of law on plaintiff's failure to maintain insurance under the No-Fault Act, the court was persuaded plaintiff was "culpably uninsured" under N.J.S.A. 39:6A-4.5(a). The court therefore concluded plaintiff was barred from recovering economic and noneconomic losses sustained as a result of the July 10, 2019 accident pursuant to N.J.S.A. 39:6A-4.5(a). This appeal followed.

II.

We review de novo a trial court's decision on a summary judgment motion. See Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed a light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendant to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill, 142 N.J. at 540; see also R. 4:46-2(c). We owe no deference

A-0943-24

to the trial court's legal analysis. The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

We likewise review de novo matters of statutory interpretation. Grillo v. State, 469 N.J. Super. 267, 274 (2021); see also Malzberg v. Josey, 473 N.J. Super. 537, 545-46 (App. Div. 2022) (reviewing the trial court's interpretation of the TNCSRA "with a fresh set of eyes"). Because "[t]his is a case of statutory interpretation," we must "'discern and give effect' to the Legislature's intent." State v. Munafo, 222 N.J. 480, 488 (2015) (quoting State v. O'Driscoll, 215 N.J. 461, 474 (2013)). Ordinarily, "the best indicator of that intent is the statutory language" itself, DiProspero v. Penn, 183 N.J. 477, 492 (2005), and "courts should 'ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole,'" Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 101 (2009) (quoting DiProspero, 183 N.J. at 492).

"It is firmly established that '[t]he first step in determining the Legislature's intent is to look at the plain language of the statute.'" Cohen v. Southbridge Park, Inc., 369 N.J. Super. 156, 161 (App. Div. 2004) (alteration in original) (quoting Hubbard v. Reed, 168 N.J. 387, 392 (2001)). "[W]hen the language of a statute is clear on its face, 'the sole function of the courts is to

enforce it according to its terms.'" Ibid. (quoting Hubbard, 168 N.J. at 329); see also Munafo, 222 N.J. at 488 (holding "a court may not rewrite a statute or add language that the Legislature omitted"); O'Connell v. State, 171 N.J. 484, 488 (2002) (holding "a court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language"). We must "construe and apply the statute as enacted." In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980).

In the present matter, plaintiff does not dispute she lacked personal automobile liability insurance at the time of the accident. Rather, at issue is whether plaintiff was driving an "automobile" as defined in N.J.S.A. 39:6A-2(a) of the No-Fault Act thereby requiring her to maintain PIP benefits at the time of the accident and, because she failed to do so, whether she was barred from pursuing her claim for economic and noneconomic damages under N.J.S.A. 39:6A-4.5(a).

"To reduce the cost of automobile insurance, protect victims of automobile accidents and reduce public expenditures when accidents are caused by judgment-proof tortfeasors," our state has enacted a comprehensive statutory scheme centering on compulsory insurance laws. Perrelli v. Pastorelle, 206 N.J.

193, 201 (2011). "All owners of motor vehicles registered or principally garaged in New Jersey are required to maintain minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles." Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004) (citing N.J.S.A. 39:6B-1). Accordingly, "automobile accident victims are not left without the means to recover financially for their injuries from a judgment-proof tortfeasor." Ibid.

Building on that requirement, in 1972, New Jersey enacted the No-Fault Act, which further directs all insurance policies "include PIP benefits, which guarantee 'without regard to fault,' medical expense coverage for the named insured and members of his or her household." Perrelli, 206 N.J. at 201 (quoting Caviglia, 178 N.J. at 466); see also N.J.S.A. 39:6A-4. The No-Fault Act further provides:

> Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by [N.J.S.A. 39:6A-4, -3.1 or -3.3] shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
>
> [N.J.S.A. 39:6A-4.5(a).]

This limitation on the right to sue, and other limitations contained in the No-Fault Act, were intended to further its two primary goals, that is, to: (1) "provide prompt payment of medical expenses arising from an automobile accident, regardless of fault"; and (2) "contain the rising cost of automobile insurance premiums." Goyco v. Progressive Ins. Co., 257 N.J. 313, 320 (2024) (quoting Cooper Hosp. Univ. Med. Ctr. v. Selective Ins. Co. of Am., 249 N.J. 174, 179 (2021)). These restrictions on the right to sue are considered "trade-off[s] for lower premiums and prompt payment of medical expenses." Caviglia, 178 N.J. at 467. Thus, "an injured, uninsured driver [cannot] draw on the pool of accident-victim insurance funds to which he [or she] did not contribute." Id. at 471. In this way, the legislation provides a "very powerful incentive to comply with the compulsory insurance laws: obtain automobile liability insurance coverage or lose the right to maintain a suit for both economic and noneconomic injuries." Ibid.

Under the No-Fault Act, an "automobile" is defined as:

> [A] private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same

A-0943-24

household, not customarily used in the occupation, profession or business of the insured other than farming or ranching. . . .

[N.J.S.A. 39:6A-2(a).]

Enacted in 2017, the TNCSRA established statewide standards for TNCs, such as Uber, by outlining various requirements for these companies and their drivers and riders. See N.J.S.A. 39:5H-3 to -26. In doing so, the Legislature "clearly recognized the commercial and societal value of new technologies that use mobile digital networks to connect customers with service providers." Malzberg, 473 N.J. Super. at 554. Pursuant to the TNCSRA, a TNC provides access to its "digital network," typically in the form of a cellphone application, to connect a rider with a driver. N.J.S.A. 39:5H-2. In exchange for compensation, a TNC driver uses a "personal vehicle" to provide a "prearranged ride," that is, a ride arranged through the TNC's digital network that begins when a driver accepts the request and ends when the rider exits the vehicle. Ibid.

Under the TNCSRA, a "personal vehicle" is defined as:

[A] motor vehicle that is used by a [TNC] driver to provide prearranged rides and is owned, leased, or otherwise authorized for use by the [TNC] driver. . . . A personal vehicle shall not be considered an automobile as defined in [N.J.S.A. 39:6A-2] while a [TNC] driver is providing a prearranged ride.

[N.J.S.A. 39:5H-2.]

12

Plaintiff maintains the undisputed record demonstrates, when the accident occurred, she was a TNC driver providing a "prearranged ride" to an individual via the Uber application. Citing our pre-TNCSRA decision in Bello v. Hurley Limousines, 249 N.J. Super. 31 (App. Div. 1991), Allstate counters the temporary use of plaintiff's vehicle in providing prearranged rides does not overcome its general classification as a private passenger automobile under the No-Fault Act.

Similar to the present matter, the issue in Bello was whether a car involved in a pedestrian death met the definition of an "automobile" in N.J.S.A. 39:6A-2(a). 249 N.J. Super. at 36. We concluded a four-door sedan registered as a limousine, but temporarily used by the driver for his own personal business, was a limousine and not an "automobile" under N.J.S.A. 39:6A-2(a). Id. at 36-37. We held a "motor vehicle's classification as a public or livery conveyance for passengers" under the No-Fault Act "does not change by its temporary or transitory use for some other purpose. Rather, the motor vehicle's general status controls its classification." Id. at 37.

We held "[h]ad the Legislature intended that the motor vehicle's use at the precise time of the accident controlled its classification, it is reasonable to conclude that the Legislature would have included language to that effect in the

[No-Fault] Act." Ibid. We reasoned "classifying vehicles by their use at the precise time of the accident would create chaos and undermine the purposes of the Act." Ibid.

Bello does not command the same result here. Under the TNCSRA, a vehicle's temporary use expressly affects its general classification. See N.J.S.A. 39:5H-2. As we explained in Bello, the Legislature knows how to include language in a statute when it intends a "motor vehicle's use at the precise time of the accident control[s] its classification." 249 N.J. Super. at 37. Although the Legislature did not include the "vehicle's use" language in the No-Fault Act, the Legislature expressly stated a "personal vehicle shall not be considered an automobile as defined [in the No-Fault Act] while a [TNC] driver is providing a prearranged ride." N.J.S.A. 39:5H-2.

A plain reading of the definitions embodied in the No-Fault Act and TNCSRA, reveals their terms are clear and unambiguous. See, e.g., DiProspero, 183 N.J. at 492. There is no dispute that at the time of the accident, plaintiff was a TNC driver, who operated her motor vehicle while "providing a prearranged ride" to a passenger. Construing N.J.S.A. 39:5H-2 as enacted, under these circumstances, we conclude plaintiff's Mazda fell squarely within the TNCSRA's definition of a "personal vehicle."

A-0943-24

We also part company with the motion court's conclusion that, because plaintiff violated certain provisions of the TNCSRA, her vehicle could not be considered a "personal vehicle" as defined in N.J.S.A. 39:5H-2.  Stated another way, the court held because the TNCSRA required plaintiff to maintain automobile liability insurance on her personal vehicle, her failure to do so barred her from seeking the TNCSRA's protection.  To support its decision, the court cited N.J.S.A. 39:5H-16, -19, and -20; on appeal William also cites N.J.S.A. 39:5H-11.  None of these provisions is dispositive.

Both N.J.S.A. 39:5H-16 and -19 pertain to a TNC driver's application process.  N.J.S.A. 39:5H-16 requires TNC applicants to include, among other information, "a copy of [their] . . . automobile liability insurance" in their application.  N.J.S.A. 39:5H-19, requires a TNC to "conduct a social security number trace" of applicants and provides the applicant the option of submitting three of eleven specified documents.  One of the documents listed as an option is "the applicant's automobile liability insurance policy."  N.J.S.A. 39:5H-19(a)(3).

A plain reading of these provisions demonstrates they set forth documentation and other requirements for TNCs and their drivers as part of the application process.  But these provisions neither impose ongoing obligations

A-0943-24

on TNC drivers to maintain personal automobile liability insurance, nor bar or limit insurance coverage for their failure to do so. Simply stated, these provisions govern the application and approval process. Further, the record contains no indication, nor do defendants contend, plaintiff failed to comply with these requirements when she submitted her application to Uber.

Similarly, N.J.S.A. 39:5H-11 requires a TNC to provide written notice to its drivers regarding the company's insurance coverage before they begin accepting ride requests, N.J.S.A. 39:5H-11(a), and to inform them that their personal automobile insurance may not apply while using the platform, N.J.S.A. 39:5H-11(b). These provisions do not mandate a TNC driver maintain personal automobile insurance.

We turn to the motion court's finding that, by allowing her insurance to lapse, plaintiff also violated the requirements of N.J.S.A. 39:5H-20(f) (Section 20(f)), which directs:

> An applicant or driver shall be prohibited from utilizing the [TNC]'s digital network as a [TNC] driver or from providing a prearranged ride as a [TNC] driver if . . . [t]he applicant or driver does not possess proof of valid automobile liability insurance for the personal vehicle[.]

Asserting she was insured under Allstate's policy issued to Uber, plaintiff argues that policy was a valid automobile liability insurance policy covering her

16

"personal vehicle" at the time of the incident. Defendants urge us to affirm the court's conclusion that, because plaintiff allowed her personal automobile liability insurance to lapse, she did not possess proof of valid automobile liability insurance as Section 20(f) requires. They contend plaintiff not only was prohibited from accessing Uber's digital network and from providing a prearranged ride, but also this violation precluded her from invoking the TNCSRA's protections.

The TNCSRA does not outline the statutory consequences of violating Section 20(f), or whether a violation renders plaintiff ineligible to invoke its protections. Notably, the parties do not dispute, on the date of the accident, plaintiff accessed Uber's digital network and was connected to a TNC rider – and, at that time, was providing a prearranged ride to her passenger.

However, there is no evidence in the motion record to support the court's' conclusion that a TNC driver's violation of Section 20(f) removes the driver's car from the definition of a "personal vehicle" under the TNCSRA. That determination hinges on two elements, whether: (1) plaintiff was insured by Allstate through Uber; and (2) Allstate's policy was "valid automobile liability insurance" under Section 20(f). Because the motion court did not resolve these

17

factors, we remand the issue for consideration. We add the following remarks for guidance on remand.

In remanding this matter, we recognize the TNCSRA does not expressly define the term "valid automobile liability insurance." Elsewhere in the act however, a TNC driver's automobile insurance requirements are specified. N.J.S.A. 39:5H-10(a) to (j). Specifically,

> a [TNC] driver, [TNC], or any combination of the two shall maintain primary automobile insurance that recognizes that the driver is a [TNC] driver, or otherwise uses a personal vehicle to provide prearranged rides, and covers the driver: (1) while the driver is logged on to the [TNC]'s digital network but is not providing a prearranged ride; or (2) while the driver is providing a prearranged ride.
>
> [N.J.S.A. 39:5H-10(a).]

The insurance requirements differ depending upon whether the TNC driver is providing a ride.

When a TNC driver is logged into the digital network and "is available to receive a prearranged ride request, but is not providing a prearranged ride," N.J.S.A. 39:5H-10(b) directs:

> [T]he [TNC] driver, [TNC], or any combination of the two shall maintain the following insurance coverage:
>
>> (1) primary automobile liability insurance in the amount of at least $50,000 for death or bodily

A-0943-24

injury per person, $100,000 for death or bodily injury per incident, and $25,000 for property damage;

(2) primary [PIP] benefits that provide coverage amounts selected pursuant to section 4 of [the No-Fault Act]; and

(3) uninsured and underinsured motorist coverage to the extent required pursuant to section 2 of [N.J.S.A. 17:28-1.1].

Relevant here, when "a [TNC] driver is providing a prearranged ride," N.J.S.A. 39:5H-10(c) provides:

[T]he [TNC] driver, [TNC], or any combination of the two shall maintain the following insurance coverage:

(1) primary automobile liability insurance in the amount of at least $1,500,000 for death, bodily injury, and property damage;

(2) primary automobile insurance for medical payments benefits in an amount of at least $10,000 per person per incident, which shall only apply to and provide coverage for the benefit of the [TNC] driver; and

(3) uninsured and underinsured motorist coverage in an amount of at least $1,500,000.

Accordingly, the TNCSRA requires higher insurance coverage when a driver is providing a prearranged ride versus when a driver is logged into the digital network but not engaged in a prearranged ride. Of particular relevance

to the issues raised on this appeal, subsection (b) mandates PIP coverage in accordance with the No-Fault Act whereas subsection (c) contains no such requirement. Compare N.J.S.A. 39:5H-10(b), with N.J.S.A. 39:5H-10(c). Further, the TNCSRA requires primary automobile insurance for medical payments, but this coverage is limited and inures to the benefit of the TNC driver. N.J.S.A. 39:5H-10(c).

Because it is undisputed plaintiff was providing a prearranged ride at the time of the accident, subsection (c) governs the determination as to whether Allstate's policy satisfied the applicable insurance requirements. According to the declaration sheet provided on appeal, the Allstate policy provides the necessary coverage amounts outlined in N.J.S.A. 39:5H-10(c). Therefore, if plaintiff was insured by Allstate at the time of the accident, she would meet the TNCSRA's coverage requirements.

The "determination of whether an individual is an insured under an insurance policy is a matter of law to be decided by the court" requiring the court "interpret the policy 'according to its plain language and ordinary meaning'" and construe the policy "'to comport with the insured's reasonable expectations of coverage.'" Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n, 364 N.J. Super.

599, 604 (App. Div. 2003) (quoting <u>Progressive Cas. Ins. Co. v. Hurley</u>, 166 N.J. 260, 272-74 (2001)).

Here, the trial court emphasized plaintiff's personal automobile liability insurance lapsed, but overlooked the possibility she may have been insured by Allstate through Uber's policy at the time of the accident, as she argues. Because the Allstate policy detailing the scope and limitations of coverage was not included in the motion record, however, we cannot interpret the policy according to its plain language and ordinary meaning.

Although defendants argue plaintiff was operating an uninsured motor vehicle, neither addresses whether plaintiff was covered under Uber's policy with Allstate. Instead, in his responding brief, William cites Uber's website as of "May 6, 2025,"[5] which states:

> All drivers must maintain their own insurance policy in accordance with state and local laws. For uberX and uberXL in NJ that means valid insurance with coverage that meets or exceeds New Jersey's minimum financial responsibility requirements, with the driver's name on the insurance policy.

---

[5] William included a three-page printout of Uber's website in his appellate appendix, but the printout appears to have cut off information, there are references to hyperlinks and videos that this court cannot access, and several sections direct the reader to other parts of Uber's website for additional information.

A-0943-24

> In addition, Uber maintains automobile liability insurance on behalf of all U.S. drivers.

There are at least two problems with this information. Initially, the information was not presented to the motion court for consideration and, thus, it is inappropriate for consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Secondly, trial and appellate courts cannot "fill in missing information on their own." N.J. Dep't. of Child. & Fams. v. A.L., 213 N.J. 1, 28 (2013).

In any event, it is unclear from the record whether Uber's requirements were implemented at the time of the accident in 2019. Because this information was not included in the motion record, we cannot determine Uber's requirements at the time of the accident and the consequences, if any, Uber imposed if those requirements were breached.

On remand, the parties shall provide to the court for its consideration the full Allstate policy issued to Uber and Uber's requirements, if any, in effect at the time of the accident. We leave to the court's sound discretion whether to permit further briefing and argument. In remanding this matter, we do not suggest a preferred result, but only that the court fully interpret the Allstate policy "according to its plain language and ordinary meaning." See Hurley, 166 N.J. at 272-73.

Reversed and remanded.  Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0943-24